*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0244P (6th Cir.)
File Name: 02a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

ADDIE T. COLEMAN, on behalf
of herself and others similarly
situated,
      *Plaintiff-Appellee,*

    *v.*

GENERAL MOTORS
ACCEPTANCE CORPORATION,
      *Defendant-Appellant.*

No. 00-6484

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00211—Aleta A. Trauger, District Judge.

Argued: March 21, 2002

Decided and Filed: July 22, 2002

Before: NORRIS, SILER, and GILMAN, Circuit Judges.

―――――――――――

### COUNSEL

**ARGUED:** Jay N. Fastow, WEIL, GOTSHAL & MANGES,
New York, New York, for Appellant. Clinton W. Watkins,
Brentwood, Tennessee, for Appellee. **ON BRIEF:** Jay N.
Fastow, Peter N. Cubita, Joseph W. Gelb, WEIL, GOTSHAL

1

& MANGES, New York, New York, Stephen G. Anderson, BAKER, DONELSON, BEARMAN & CALDWELL, Knoxville, Tennessee, for Appellant. Clinton W. Watkins, Brentwood, Tennessee, Michael E. Terry, TERRY & GORE, Nashville, Tennessee, Darnley D. Stewart, BERNSTEIN, LITOWITZ, BERGER & GROSSMANN, New York, New York, Gary Klein, GRANT & RODDY, Boston, Massachusetts, Stuart T. Rossman, NATIONAL CONSUMER LAW CENTER, Boston, Massachusetts, Wyman O. Gilmore, Jr., GILMORE LAW OFFICE, Grove Hill, Alabama, for Appellee. Jessica Dunsay Silver, Gregory B. Friel, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, Washington, D.C., for Amicus Curiae.

———————————

**OPINION**

———————————

ALAN E. NORRIS, Circuit Judge. Defendant General Motors Acceptance Corporation (GMAC) appeals the district court's order certifying a plaintiff class in this action alleging racial discrimination under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f. Defendant contends that the district court abused its discretion in certifying this class under Rule 23(b)(2) of the Federal Rules of Civil Procedure because the claims for injunctive relief do not predominate over the monetary damages requested in the complaint. After careful consideration, we vacate the class certification order and remand for further proceedings consistent with this opinion.

**I.**

Plaintiff Addie T. Coleman is an African-American woman who entered into a retail contract with Beaman Automotive Group for the purchase of a vehicle in 1995. GMAC subsequently purchased the contract, and plaintiff made

*Actions After the Civil Rights Act of 1991*, 2001 B.Y.U. L. Rev. 305, 318 (2001) (noting that back pay calculations generally can be applied with more efficiency than damages calculations in a class action and are therefore more appropriate for inclusion in a 23(b)(2) class). For example, determining the damages of each class member in this case would involve investigation into the practices of multiple auto dealerships whereas a back pay claim typically involves the practices of a single employer.

More importantly, as an equitable remedy, back pay does not involve the more significant issues of procedural fairness and constitutionality raised by the inclusion of plaintiff's compensatory damages claim in this class. *See, e.g.*, *Allison*, 151 F.3d at 415 (distinguishing back pay from compensatory damages under Title VII as "an equitable remedy similar to other forms of affirmative injunctive relief permitted in (b)(2) class actions"). Plaintiff's argument that similar efficiency problems are involved in calculating back pay as compensatory damages fails to address these issues.

Accordingly, we hold that the district court abused its discretion in certifying the proposed class under Rule 23(b)(2) because compensatory damages under the ECOA are not recoverable by a Rule 23(b)(2) class.

**III.**

For the foregoing reasons, we **vacate** the certification order of the district court and **remand** to the district court with instructions to proceed in a manner consistent with this opinion.

apply a classwide formula to their calculation).  Finally, the primary justification for class treatment of these claims is largely absent in this case because the ECOA's provision for the award of attorney's fees and costs to successful plaintiffs eliminates any potential financial bar to pursuing individual claims.  15 U.S.C. § 1691e(d).

Plaintiff contends that it was appropriate for the district court to include this claim in the class certified because these damages are susceptible to determination on a classwide basis.  This argument is undermined, however, by the fact that her request for compensatory damages defines them by reference to the markup charged to each individual member of the class.[1]  Under her own proposed formula the court would be required to ascertain the markup charged to each individual member of the class and compare it to the proposed average.

Plaintiff also argues that the need for individualized determinations concerning damages is not fatal to certification under Rule 23(b)(2) and points to our precedents holding that back pay is a permissible remedy in a Rule 23(b)(2) class. *See, e.g., Alexander v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 565 F.2d 1364, 1372 (6th Cir. 1977) ("A request for back pay does not preclude certification under [23(b)(2)].") (citing cases). While it is true that a claim for back pay implicates some of the same efficiency concerns we have cited today as part of our reasoning for excluding compensatory damages from a Rule 23(b)(2) class, back pay is qualitatively different from compensatory damages under the ECOA because calculation of back pay generally involves less complicated factual determinations and fewer individualized issues. *See generally* Daniel F. Piar, *The Uncertain Future of Title VII Class*

---

[1] Plaintiff's complaint requests compensatory damages "equal to the difference between the markup charge imposed on her pursuant to the Finance Charge Markup Policy and the average markup charge imposed on white persons during the same time period."

payments to GMAC through May 2000 when she paid off the contract.

Plaintiff filed this suit under the ECOA against defendant, alleging that GMAC's retail credit pricing system for automobile purchases results in discrimination against African-Americans.  Plaintiff seeks injunctive relief and compensatory damages under the ECOA. The district court's memorandum opinion provides a brief description of GMAC's pricing system:

> [T]here are two components to the annual percentage rate ("APR") set in [GMAC's] retail installment sales contracts: the "Buy Rate" and the "Finance Charge Markup".  The "Buy Rate" is the portion of the APR that "is the risk-related interest rate required by GMAC for a particular transaction."  The "Finance Charge Markup" is "the non-risk charge added to the Buy Rate" by the dealer who must not exceed a limitation set by GMAC's policy.  According to the plaintiff, there are incentives in GMAC's retail finance system to "encourage imposition of the subjective non-risk related markup."

*Coleman v. General Motors Acceptance Corp.*, 196 F.R.D. 315, 318 (M.D. Tenn. 2000).  Plaintiff qualified for a Buy Rate of 18.25% under GMAC's pricing system, but Beaman Automotive exercised its discretion under the Finance Charge Markup Policy ("markup policy") to increase her interest rate to 20.75%.  Plaintiff alleges that the discretionary markup policy is implemented in a way that has significant disparate impact on African-Americans and cannot be justified by business necessity.

Plaintiff sought to bring this suit on behalf of herself and a proposed class of plaintiffs defined as "[a]ll African American consumers who obtained financing from GMAC in Tennessee pursuant to GMAC's 'Retail Plan - Without Recourse' between May 10, 1989 and the date of judgment and who were charged a finance charge markup greater than

the average finance charge markup charged white consumers." *Id.* at 317 (footnotes omitted). Defendant opposed certification of the class because, in its view, the individualized issues regarding liability and damages render the suit inappropriate for class treatment.

The district court certified plaintiff's proposed class under Fed. R. Civ. P. 23(b)(2). Defendants sought an interlocutory appeal of the class certification under Fed. R. Civ. P. 23(f), which we granted.

## II.

This court reviews a district court's grant of class certification for abuse of discretion. *See McAuley v. Int'l Business Machines Corp.,* 165 F.3d 1038, 1046 (6th Cir. 1999). Abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). While the district court has broad discretion in certifying class actions, it must exercise that discretion within the framework of Rule 23. *Cross v. Nat'l Trust Life Ins. Co.,* 553 F.2d 1026, 1029 (6th Cir. 1977).

In order to obtain class certification, plaintiff must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The district court determined that plaintiff satisfied all four of these requirements. Because we hold that the proposed class violates the requirements of Rule 23(b)(2), we will not address the question of whether plaintiff meets the Rule 23(a) requirements.

In addition to satisfying the requirements of Rule 23(a), however, plaintiff must demonstrate that the class fits under one of the three subdivisions of Rule 23(b). Plaintiff sought certification under two of these subdivisions, 23(b)(2) and (3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or

damages determination or is susceptible to calculation on a classwide basis.

Finally, we are guided by the general purposes underlying class treatment of claims. The Supreme Court has described the underlying purpose of a class action as follows:

> The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

*Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Accordingly, class treatment of claims is most appropriate where it is not "economically feasible" for individuals to pursue their own claims.

In analyzing the class certified by the district court, it is apparent that the compensatory damages requested implicate all of these concerns. First, the inclusion of this claim undermines the assumption of homogeneity because each member of the class has an individual stake in the outcome of the litigation that could be protected by the opportunity to opt out of the class. *See Holmes*, 706 F.2d at 1156 ("money damages are directly related to the disparate merits of individual claims and are not generally applicable to the claims of the class as a whole") (internal quotations omitted). Second, the individualized determinations necessary to calculate the amount of damages each class member would be entitled to eliminates the efficiencies created by adjudicating these claims on a classwide basis. *See, e.g., Buycks-Roberson v. Citibank Federal Savings Bank*, 162 F.R.D. 322, 335 (N.D. Ill. 1995) (denying certification of compensatory damages claims under Rule 23(b)(2) in a class action asserting discrimination under the ECOA because of the inability to

damages are to be included in any mandatory class in order to protect the individual interests at stake and ensure that the underlying assumption of homogeneity is not undermined. *See In re Telectronics Pacing Sys., Inc.*, 221 F.3d at 881 (stating that certification of a mandatory class under Rule 23(b)(1)(B) "must be carefully scrutinized" because it lacks the protections of a Rule 23(b)(3) class).

In addition to these considerations of procedural fairness, we are guided by the advisory committee's discussion of the predomination requirement in the Rule 23(b)(3) context, which explicitly requires that "questions of law or fact common to members of the class predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). The committee's discussion of this Rule 23(b)(3) requirement is relevant here because the inclusion of compensatory damages claims in a Rule 23(b)(2) class raises the same concerns that are present in a Rule 23(b)(3) class. *See Allison*, 151 F.3d at 414-15 ("[T]he predomination requirement of Rule 23(b)(2) serves essentially the same functions as the procedural safeguards and efficiency and manageability standards mandated in (b)(3) class actions.").

The advisory committee states that a court is required to find that common issues predominate in a Rule 23(b)(3) class because "[i]t is only where this predominance exists that economies can be achieved by means of the class-action device." Fed. R. Civ. P. 23(b)(3) advisory committee's note. Similar concerns are implicated in the determination of whether injunctive relief predominates in a Rule 23(b)(2) class because "the underlying premise of (b)(2) certification-- that the class members suffer from a common injury that can be addressed by classwide relief--begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries." *Eubanks v. Billington*, 110 F.3d 87, 95 (D.C. Cir. 1997). Thus, in determining whether injunctive relief predominates in a Rule 23(b)(2) class, one critical factor is whether the compensatory relief requested requires individualized

corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). The advisory committee's notes explain that this subdivision "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) advisory committee's note. Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods" of adjudication. Fed. R. Civ. P. 23(b)(3).

The district court found that the proposed class met the requirements of Rule 23(b)(2) because plaintiff alleges that GMAC's pricing system had a disparate impact on African-Americans and the primary relief she requests is injunctive in nature. The court found that certification under Rule 23(b)(3) was inappropriate because plaintiff had failed to show that individualized factors do not play a role in the finance charge markup. Defendant argues that the district court abused its discretion in certifying this class under Rule 23(b)(2) because plaintiff's claim for compensatory damages involves highly individualized determinations that are not appropriate for a Rule 23(b)(2) class.

### A.

This court has not explicitly addressed the question of whether compensatory damages are recoverable by a Rule 23(b)(2) class. As noted above, however, the advisory committee's notes contemplate this possibility, and other federal circuit courts to consider the question have held that money damages are recoverable by a Rule 23(b)(2) class in certain situations. *See, e.g.*, *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *Lemon v. Int'l Union of Operating Eng'rs.*, 216 F.3d 577, 580-81 (7th Cir. 2000); *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 410-11 (5th Cir. 1998); *Eubanks v. Billington,* 110 F.3d 87, 92 (D.C. Cir. 1997); *Boughton v. Cotter Corp.,* 65 F.3d 823, 827 (10th Cir. 1995); *Zimmerman v. Bell,* 800 F.2d 386, 389-90 (4th Cir. 1986); *In*

*re School Asbestos Litigation,* 789 F.2d 996, 1008 (3d Cir. 1986); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2nd Cir. 1968).

Notwithstanding this apparent consensus that money damages are recoverable to some extent in a Rule 23(b)(2) class action, the Supreme Court has repeatedly expressed concern over the constitutionality of certifying a mandatory class that includes claims for money damages. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (noting that certification of a mandatory class that includes money damages potentially compromises the Seventh Amendment and due process rights of individual claimants); *cf. Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (dismissing writ of certiorari on the question of whether there is a constitutional right to opt out of any class action involving monetary damages but stating that it is "at least a substantial possibility" that class actions seeking money damages can only be certified under Rule 23(b)(3) in light of the constitutional considerations implicated); *see also In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 881 (6th Cir. 2000) (stating that the Supreme Court has stressed in interpreting Rule 23 that "principles of sound judicial management and constitutional considerations of due process and the right to jury trial all lead to the conclusion that in an action for money damages class members are entitled to personal notice and an opportunity to opt out."). It is unnecessary for us to reach the question of whether money damages are ever recoverable in a 23(b)(2) class action, however, because we hold that compensatory damages under the ECOA are not recoverable by a 23(b)(2) class.

**B.**

Assuming *arguendo* that the advisory committee's notes are correct that money damages may be recoverable by a Rule 23(b)(2) class, we must determine when one form of relief predominates over another. The advisory committee's notes do not provide guidance for answering this question. For the reasons discussed below, we conclude that the injunctive relief requested in this case does not predominate over the monetary damages due to the highly individualized determinations that would be required to determine those damages.

Rule 23(b) can be divided into two general categories of class actions based on the procedural requirements that they entail. Rule 23(b)(1) and (2) are referred to as "mandatory" classes due to the fact that they do not require that a court provide individual members of the class with notice and the opportunity to "opt out" of the class action. These procedural protections are considered unnecessary for a Rule 23(b)(2) class because its requirements are designed to permit only classes with homogenous interests. *See Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 155-56 (11th Cir. 1983) ("The relief provisions of the rule reflect the need for homogeneity in the rights and interests of the class. . . .") (internal quotation marks omitted); *Wetzel v. Liberty Mut. Insurance Co.,* 508 F.2d 239, 256 (3d Cir.) (1975) ("The very nature of a (b)(2) class is that it is homogeneous without any conflicting interests between the members of the class.").

Rule 23(b)(3) is referred to as an "opt out" class due to the special requirements set forth in Rule 23(c)(2) that all potential members of the class be provided reasonable notice and the opportunity to decline to participate in the action. Fed. R. Civ. P. 23(c)(2). The additional requirements of notice and the opportunity to opt out are necessary in Rule 23(b)(3) classes precisely because claims for money damages involve individual interests that are necessarily heterogenous in nature. Fed. R. Civ. P. 23(c)(2) advisory committee's note; *see also*, *Holmes*, 706 F.2d at 1156 ("Heterogeneity, and its attendant potential for diverging interests, necessitated special rules of procedure to protect absent members of the (b)(3) class."). Moreover, the class treatment of claims for money damages implicates the Seventh Amendment and due process rights of individual class members. *See Ortiz*, 527 U.S. at 846. Accordingly, close scrutiny is necessary if money