**Betty T. CASON, on behalf of herself and all others similarly situated,**

v.

**NISSAN MOTOR ACCEPTANCE CORPORATION**

No. 3:98–0223.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 16, 2002.

Clinton W. Watkins, Brentwood, TN, Michael Terry, Nashville, TN, Daniel Berger, New York City, Stuart Rossman, Boston, MA, for plaintiff.

Charles J. Mataya, Nashville, TN, James Bruinsma, Chicago, IL, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are Plaintiffs' Supplemental Memorandum in Support of Class Certification (Docket No. 501), Defendant's Motion to Preclude Untimely Filing of "Bench Brief" (Docket No. 504), Defendant's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Docket No. 510), Plaintiffs' Class Certification Reply Brief (Docket No. 514); Defendant's Response thereto (Docket No. 519); and Plaintiffs' Post Argument Submission Regarding Class Certification Issues (Docket No. 520). The Court heard oral argument on the class certification issue on October 7, 2002. Defendant's Motion to Preclude Untimely Filing of "Bench Brief" (Docket No. 504) is moot.

For the reasons stated herein, Plaintiffs' Motion for Class Certification is conditionally GRANTED in part and DENIED in part.

This lawsuit involves allegations of violations of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* ("ECOA"), by Defendant Nissan Motor Acceptance Corporation ("NMAC") in its policy and practices of providing motor vehicle financing. *See* Plaintiffs' Seventh Amended Complaint (Docket No. 493). Plaintiffs allege that NMAC's policy and practices have a disparate impact on African–American consumers. *Id.*

Plaintiffs brought this action on behalf of themselves and all others similarly situated and now seek class certification. Plaintiffs ask this Court to certify a class of plaintiffs defined as "all African–American consumers who obtained vehicle financing from NMAC in the United States pursuant to NMAC's 'retail plan—without recourse,' between January 1, 1990 and the date of judgment." Seventh Amended Complaint (Docket No. 493), p. 30.

On August 22, 2001, this Court conditionally certified a class in this action, based upon the Fourth Amended Complaint, under both Rule 23(b)(2) and Rule 23(b)(3).[1] At that time, the Court noted that the precise definition of the class had not been completed. Transcript of Hearing (Docket No. 194), p. 151. The Court found that this case met the requirements of Rule 23(a), noting that common issues of fact—the alleged policy—and common issues of law—the ECOA and disparate impact law—existed among class members. *Id.* The Court held that the commonality and typicality involved Defendant's national policy, applied in every dealership, nationwide. *Id.*

The Court subsequently vacated its class certification order because Plaintiffs filed an

---

1. That Order was appealed to the Sixth Circuit Court of Appeals and then the appeal was dismissed. *See* Docket Nos. 208 and 465.

Amended Complaint. *See* Order (Docket No. 453). Meanwhile, the Court denied Plaintiffs' Motion for Preliminary Injunction after an extensive evidentiary hearing. *See* Order (Docket No. 442). Subsequently, the Sixth Circuit Court of Appeals decided a case with certain similar issues. *See Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443 (6th Cir.2002).

The relief sought in Plaintiffs' Seventh Amended Complaint is (1) a judgment declaring that NMAC's credit pricing policy violates the ECOA; (2) a judgment ordering all appropriate equitable relief as is necessary to enforce the ECOA requirements; and (3) Plaintiffs' costs and attorneys' fees. Docket No. 493, p. 33. Plaintiffs do not expressly ask for money damages in the current Complaint.

The sole issue before the Court at this time is whether to certify this purported class, pursuant to Rule 23 of the Federal Rules of Civil Procedure and based upon the Seventh Amended Complaint. Plaintiffs, more specifically, have asked the Court for "partial" certification of the class; that is, to certify the class for Plaintiffs' claim for declaratory and injunctive relief, pursuant to Fed.R.Civ.P. 23(b)(2), and to defer a decision on certification for Plaintiffs' claim for equitable relief until after the trial on liability. Docket No. 501, p. 2; Transcript of 10–7–02 hearing (Docket No. 516), pp. 6–7. Alternatively, Plaintiffs ask the Court to certify the class for declaratory and injunctive relief only, pursuant to Fed.R.Civ.P. 23(b)(2). Docket No. 501, p. 23; Docket No. 516, pp. 7 and 20.

## CLASS CERTIFICATION

In order for a class to be certified under Rule 23, the Plaintiffs must first establish the requirements of Rule 23(a): (1) class is so numerous that joinder of all members is impracticable [2]; (2) questions of law or fact common to the class; (3) claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) representative parties will fairly and ade-

quately protect the interests of the class. Fed.R.Civ.P. 23(a). The Court finds nothing in the Seventh Amended Complaint or subsequent record which changes its previous opinion that the Plaintiffs have met the requirements of Rule 23(a). Plaintiffs have adequately alleged and produced evidence that NMAC has acted in a manner generally applicable to the putative class. Any individual transaction characteristics do not defeat typicality, commonality or cohesiveness. Thus, the Court next considers subsection (b).

Rule 23 provides that a class may be certified if the prerequisites of subsection (a) are met and, among other things, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole," Fed.R.Civ.P. 23(b)(2), or "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). For class actions maintained under subdivision (b)(3), Rule 23 mandates that notice, with an opportunity to opt out, be sent to all class members. Fed.R.Civ.P. 23(c)(2).[3]

Rule 23 also provides that the Court may certify a class action with respect to particular issues or divide the class into subclasses when appropriate. Fed.R.Civ.P. 23(c)(4). Finally, Rule 23 states that the Court may make appropriate orders to, among other things, require, for the protection of members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the Court may direct. Fed.R.Civ.P. 23(d).

The ECOA provides for the recovery, in appropriate cases, of actual damages [15 U.S.C. § 1691e(a)], punitive damages [15 U.S.C. § 1691e(b)], equitable and declaratory relief [15 U.S.C. § 1691e(c)], and costs and

---

**2.** In this case, numerosity is undisputed.

**3.** Notice is not mandated for class actions under Rule 23(b)(2), but it is permitted. *Coleman* at 447; Fed.R.Civ.P. 23(c) and (d).

attorneys' fees [15 U.S.C. § 1691e(d)]. Plaintiffs' Seventh Amended Complaint seeks remedies under subsections (c) and (d) only. Section 1961e(c) is a broad remedial provision.[4] *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 33 (3d Cir. 1995). Plaintiffs contend that the total absence of a compensatory damage claim in their Seventh Amended Complaint completely resolves any impediment to class certification under Rule 23(b)(2) and *Coleman.*

In *Coleman,* the court reviewed a case with certain facts similar to those herein. The district court had certified a class under Rule 23(b)(2), and the Sixth Circuit held that the district court abused its discretion in certifying the class because compensatory damages under the ECOA are not recoverable by a Rule 23(b)(2) class. *Coleman,* 296 F.3d at 450.

Citing the advisory committee notes to Rule 23(b)(2), the *Coleman* court determined that the injunctive relief sought did not predominate over the monetary damages because of the highly individualized determinations that would be required to determine those damages. *Id.,* pp. 446–447.[5] In *Coleman,* the plaintiff sought compensatory damages "equal to the difference between the markup charge imposed on her pursuant to the Finance Charge Markup Policy and the average markup charge imposed on white persons during the same time period." *Id.,* p. 449, n. 1. The Sixth Circuit noted that each member of the class had an individual stake in the outcome of the litigation that could be protected by the opportunity to opt out of the class. *Id.* at 449.

Plaintiffs have stated in their briefs and at hearings that the equitable relief they seek includes disgorgement of any monetary amounts by which NMAC is determined to have profited for illegal conduct. Plaintiffs assert that disgorgement, unlike compensatory damages, is an equitable remedy and is measured by the wrongdoer's gain, with a goal of preventing unjust enrichment. Docket No. 501, p. 9. Plaintiffs argue that the remedy of disgorgement is measured in the aggregate and, thus, will not interject individualized issues into the case. *Id.*

The Court need not determine whether disgorgement is an appropriate remedy or is different from compensatory damages at this time. In this case, disgorgement, even if measured in the aggregate and based upon the wrongdoer's gain, is a request for money that will require individual determinations in order for any such award to be distributed to class members. Even if the money were to be divided *pro rata,* the process of simply identifying class members entitled to distribution, the identities of whom are unknown at this time, would require an individual determination as to each person and an individualized distribution procedure.[6] These required individualized determinations would diminish the efficiencies that would be created by adjudicating the disgorgement claims on a classwide basis.

Defendant objects to class certification under Rule 23(b)(2), arguing that it would inhibit Defendant's right to certain defenses, including its assertion that the NMAC pricing policy changed over time; that the circumstances surrounding each transaction prove race was not a factor; and that the individual dealers dealt with consumers differently. Transcript (Docket No. 516), pp. 25–26. The Court finds that such evidence, however, is not precluded by certification of a class action. Plaintiffs have the burden of proving disparate impact, and Defendant is free to discredit Plaintiffs' experts and Plaintiffs' statistical evidence in any way that is permis-

---

**4.** The ECOA therefore differs from ERISA, the statute at issue in *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), relied upon by Defendant.

**5.** In determining whether injunctive relief predominated, the court held that one critical factor is whether the compensatory relief requested requires individualized damages determinations or is susceptible to calculation on a classwide basis. *Coleman* at 448.

**6.** Even if it were possible to calculate disgorgement damages on a classwide basis, such damages would not be capable of being distributed on a classwide basis because the parties have not identified the specific class members. The specific class members have not been identified because NMAC's records do not include the race of the borrowers at issue.

sible under the Federal Rules of Evidence. NMAC has acted in a manner generally applicable to the members of the proposed class and the conduct complained of is sufficiently similar to justify common adjudication of liability and declaratory and injunctive relief.

Defendant also asserts that *Coleman* controls this case because disgorgement is the same as compensatory damages. As noted above, the Court need not reach this argument, because compensatory or not, disgorgement in this case would predominate over declaratory and injunctive relief. It would also require the individualized determinations of the identities and race of class members in order to distribute any monetary award.

Defendant contends that Plaintiffs' class definition is too broad, arguing that the people who fall within the definition are not like one another because of individual buyer characteristics, dealer characteristics, and the wide variety of pricing programs. *Id.,* pp. 31–32. Again, the Court does not believe these differences affect certification of the class, even though they may be appropriate evidence for cross-examination or rebuttal. All class members were subject to the alleged unlawful policy. This is a disparate impact case. The liability determination does not involve inappropriate, individualized issues, so adjudication of liability here as a class action does not eliminate the efficiencies created by adjudicating the liability claim on a classwide basis. *See Coleman* at 449.[7]

Finally, Defendant maintains that aggrieved plaintiffs have an adequate remedy at law such that a class action is not a superior method for the fair and efficient adjudication of this case. The Court disagrees. Proof of liability in a disparate impact case is virtually the same for individual plaintiffs or a class of plaintiffs. Contrary to Defendant's assertion, proof of liability in a disparate impact case such as this one would be a financial bar to individual claimants. That proof can be very expensive, involving experts and statistical data. This case clearly has been very expensive.[8] As noted in *Coleman,* class treatment of claims is most appropriate where it is not "economically feasible" for individuals to pursue their own claims, *Coleman* at 449, and the Court finds this case to be such an action. Moreover, the ECOA expressly contemplates class actions and the award of attorneys' fees in successful class actions. 15 U.S.C. § 1691e (a), (b) and (d).

In this case, damages of monetary amounts clearly would predominate over injunctive or declaratory relief. In other words, the magnitude of the alleged disgorgement would cause the injunctive and declaratory relief to be secondary. As the court stated in *Coleman,* the advisory committee notes to Rule 23(b)(2) explain that (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Coleman* at 446. The distribution of any monetary award, be it disgorgement or compensatory damages, would also involve highly individualized determinations of the identity and race of purported class members. For these reasons, the Court cannot certify a class for purposes of Plaintiffs; first alternative under Rule 23(b)(2).

In addition, the Court declines to bifurcate the certification process as Plaintiffs suggest, certifying a class for purposes of liability only

---

7. The class definition is sufficiently precise for conditional class certification of declaratory and injunctive relief. The time period covered is also appropriate for conditional class certification given the alleged tolling of the statute of limitations by the undisclosed policy at issue. These matters have been previously addressed by the Court.

8. For example, the preliminary injunction hearing alone involved expert witness testimony and statistical analyses, deposition testimony and thousands of pages of exhibits. *See* Transcript of Preliminary Injunction Hearing (Docket No. 432). This case has been pending since March 12, 1998. There have been 518 docket entries, seven Complaints, numerous discovery disputes, various dispositive motions supported by exhibits, and an interlocutory appeal. Plaintiffs' counsel explained at the hearing that Plaintiffs have had to go to 14 states to obtain drivers' license information and have had to litigate in five states, plus hire experts to analyze the data. In any event, even if there would not be a financial bar, this factor alone does not warrant denial of class certification when balanced against the other *Coleman* criteria.

and deferring any decision on class certification for the purpose of relief until the liability trial is over. Such an approach would not be in the interest of judicial economy, fair to the Defendant, or practical in this particular case.

The Court finds that Plaintiffs have established the requirements of Rule 23(a), but they have not established the requirements of Rule 23(b)(2) under their first alternative; that is, so long as they are claiming disgorgement as an equitable remedy. Accordingly, Plaintiffs' Motion for Class Certification under the first alternative is DENIED.

Plaintiffs have alternatively moved for class certification, however, simply as to the declaratory and injunctive relief.[9] No such request was made in *Coleman.* The Court finds that Plaintiffs' claims for declaratory and injunctive relief are appropriate for class certification under Rule 23(b)(2). Such relief will not require individualized determinations. Because it does not involve money, declaratory and injunctive relief can be awarded with no individualized analysis as to the class members. Clearly the declaratory and injunctive relief would predominate, as required by *Coleman* and Rule 23.

Accordingly, the Court conditionally certifies Plaintiffs' claims for declaratory and injunctive relief only, pursuant to Rule 23(b)(2), and Plaintiffs' Motion for Class Certification on their second alternative is GRANTED. Having conditionally certified the class as to declaratory and injunctive relief only, it will not be necessary for the parties to litigate or the Court to decide the issue of classwide monetary damages, including disgorgement.

In addition, the Court is satisfied that the proposed definition of the class is sufficiently precise for the declaratory and injunctive relief sought.

As for notice to the class, Plaintiffs contend that no notice is required until the time of the damages trial, if any. As to liability, they argue, potential class members will be giving up no rights by allowing the named Plaintiffs to proceed to judgment. NMAC argues that notice is important because Plaintiffs have waived the right to a jury. Yet, it asserts, notice cannot effectively be given in this case because of the limited race data available. *Id.,* pp. 32–34.

The *Coleman* case has resolved this issue: "These procedural protections are considered unnecessary for a Rule 23(b)(2) class because its requirements are designed to permit only classes with homogenous interests." *Coleman* at 447. Accordingly, no notice will be ordered.

### CONCLUSION

Plaintiffs' Motion for Class Certification is GRANTED in part and DENIED in part. The Court hereby conditionally certifies[10] a class of "all African–American consumers who obtained vehicle financing from NMAC in the United States pursuant to NMAC's 'retail plan—without recourse,' between January 1, 1990 and the date of judgment," for purposes of declaratory and injunctive relief only, pursuant to Fed.R.Civ.P. 23(b)(2). The liability phase of this action will be tried, without a jury, on February 3, 2003 as scheduled.

IT IS SO ORDERED.

---

9. Parties may set forth more than one claim or defense alternatively. Fed.R.Civ.P. 8(e)(2). Class certification may be made on particular issues. Fed.R.Civ.P. 23(c)(4).

10. Rule 23(c)(1) provides that an certification order may be conditional and may be altered or amended before the decision on the merits.