NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0516n.06

Case No. 20-1705

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>KATRINA WOODALL, et al.,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Plaintiffs-Appellees,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>WAYNE COUNTY, MICHIGAN,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Nov 15, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: GUY, DONALD, and MURPHY, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Wayne County challenges the district court's certification of a putative class in this action pursuant to 42 U.S.C. § 1983. This is an interlocutory appeal filed under 28 U.S.C. § 1292(e) and Rule 23(f). For the reasons set forth below, we **REVERSE** the district court's grant of certification and **REMAND** for further proceedings.

## I.

Plaintiffs Katrina Woodall, Katana Johnson, Kelly Davis, and Latoya Hearst were formerly incarcerated at Wayne County Jail between 2010–2014. Wayne County operates the largest county jail in Michigan with a current average daily population of 1,700 individuals, and as many as 2,200 per day. The Wayne County jail primarily holds individuals awaiting trial and those serving sentences under one year. As part of its policies, the inmates are subjected to strip searches

in the Registry area, and during other random cellblock searches. The Registry area is where female inmates are searched when they come into the facility for new bookings, or when they return from the court or the hospital. Cellblock floor searches take place as an unannounced check for contraband when inmates are already inside a cell.

The jail had a formal policy covering searches, which operated "[t]o prevent weapons and contraband from entering the jail and to control the possession of weapons and contraband by inmates during their confinement." The policy outlined that same gender staff were to strip search inmates and that staff were not allowed to use derogatory language toward inmates. Wayne County updated its policy in 2013, expressly prohibiting "any other inmate or person, including a civilian employee, to visually observe the inmate during the entire strip search of the inmate."

In 2017, the named Plaintiffs filed a putative class action against Wayne County Sheriff Benny N. Napoleon, and Corporal Terry Graham. The Plaintiffs alleged that they and other similarly-situated pretrial detainees were subjected to unconstitutional strip searches based on the jail's policy or custom to strip search women (1) in the presence, or public viewing, of male officers; (2) in groups with numerous inmates who didn't share any penological interest in viewing each other in a state of undress; (3) under unsanitary or unhygienic conditions; and/or (4) subject to derogatory gender-biased comments. In their complaint, Plaintiffs asserted *Monell* claims against Wayne County and Sheriff Napoleon in his official capacity, based on their policy to conduct strip searches.

On June 28, 2018, Plaintiffs filed a motion for class certification to which Plaintiffs attached approximately 400 declarations from inmates attesting to the way they were strip searched while housed at the jail.

On March 26, 2019, the district court denied without prejudice Plaintiffs' motion for class certification finding "[t]he three-year statute of limitations bars claims which accrued before November 14, 2014." Given the district court's ruling relative to the statute of limitations, the court indicated "[i]f plaintiffs want to file a new motion for class certification consisting of members whose claims accrued on or after November 14, 2014, they may still do so."

On June 25, 2019, Plaintiffs filed a renewed motion for class certification with approximately one hundred more declarations dating after November 14, 2014. The allegations mirror those of the women detained prior to November 14, 2014.

On July 6, 2019, Defendants filed a response to Plaintiffs' renewed motion to certify a class, asserting that (1) the proposed subclasses were not ascertainable and were "fail-safe"; (2) the inapplicability of Rule 23(b)(1) to a lawsuit for individualized money damages; (3) Plaintiffs' inability to meet the requirements of Rules 23(a) and 23(b)(3); and (4) that the PLRA would exclude a large number of potential class members because of a failure to exhaust administrative remedies.

On January 23, 2020, the district court issued an order certifying a class as to the common issue of law and fact relative to whether Wayne County may be liable under *Monell* for maintaining a policy or custom that violated Plaintiffs' constitutional rights under the Fourth and Eighth Amendments. The district court separated the class members into four separate subclasses:

> **Class No. 1** all females who were housed, detained, and/or incarcerated by the Wayne County Sheriff at any of the three Wayne County Jail Divisions from the period of November 14, 2014 until the date of judgment or settlement of this case, who, without a legitimate penological interest, were *exposed in the nude to members of the opposite sex while being strip searched* pursuant to the Wayne County Sheriff's policies, practices, and/or customs, and who allege they have suffered a compensable injury as a result of the search;
>
> **Class No. 2** all females who were housed, detained, and/or incarcerated by the Wayne County Sheriff at any of the three Wayne County Jail Divisions from the

period of November 14, 2014, until the date of judgment or settlement of this case, who, without a legitimate penological interest, *were stripped searched in a group with other inmates*, pursuant to the Wayne County Sheriff's policies, practices, and/or customs, and who allege they have suffered a compensable injury as a result of the search;

**Class No. 3** all females who were housed, detained, and/or incarcerated by the Wayne County Sheriff at any of the three Wayne County Jail Divisions from the period of November 14, 2014, until the date of judgment or settlement of this case, who, without a legitimate penological interest, *were stripped searched under unsanitary and/or unhygienic conditions*, including being exposed to the bodily fluids of other inmates who were being strip searched, pursuant to the Wayne County Sheriff's policies, practices, and/or customs, and who allege they have suffered a compensable injury as a result of the search;

**Class No. 4** all females who were housed, detained, and/or incarcerated by the Wayne County Sheriff at any of the three Wayne County Jail Divisions from the period of November 14, 2014 until the date of judgment or settlement of this case, who, without a legitimate penological interest, *were subject to derogatory gender-based comments by Defendant Graham during strip searches*, and who allege they have suffered a compensable injury as a result of the search.

R. 81, Page ID # 2245-2246, Order Certifying Class. Wayne County filed an interlocutory appeal, challenging the district court's class certification order.

## II.

We review a district court's class certification order under the abuse-of-discretion standard. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing *Olden v. LaFarge Corp.,* 383 F.3d 495, 507 (6th Cir. 2004)). A district court has broad discretion in certifying a class action, but "it must exercise that discretion within the framework of Rule 23." *Coleman v. Gen. Motors Acceptance Corp.,* 296 F.3d 443, 446 (6th Cir. 2002). A district court abuses its discretion if it "misapplies the correct legal standard when reaching" its class-certification conclusion. *In re Whirlpool*, 722 F.3d at 850. That is, while the class-certification decision "calls for an exercise of judgment," the "use of the proper legal framework does not." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

### A.  Rule 23(a)

Prior to certification of a class, district courts must conduct a "rigorous analysis" to determine if the movant has shown that the action satisfies all the prerequisites of Rule 23.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000).  The district court may only certify a class where "an adequate statement of the basic facts" demonstrates that each of Rule 23's requirements are met.  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citation omitted).  A district court must determine the permissibility of class certification based upon information other than that which is in the pleadings although it may do so based on the pleadings alone where they set forth sufficient facts.  *Id.*  In making such a determination, a district court may draw reasonable inferences from the facts before it.  *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976).

Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *Gen. Tel. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 321 n.3 (1980).  We place an additional requirement that the proposed class definition be "administratively feasible" to allow the Court to ascertain membership in the class by reference to objective criteria.  *See Young*, 693 F.3d at 537-38.  If the requirements of Rule 23(a) are satisfied, the action must also meet one of the conditions in Rule 23(b).  *Coleman*, 296 F.3d at 446.  The parties seeking class certification bear the burden of showing that the requirements for class certification are met.  *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016).

### i. Commonality and Typicality

Wayne County challenges the class's "commonality" and "typicality" requirements. To demonstrate commonality, Plaintiffs must show that class members have suffered the same injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* What matters to the commonality requirement of class certification is the "capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted)*; Davis v. Cintas Corp*., 717 F.3d 476, 487 (6th Cir. 2013) (same).

Although typicality tends to merge with commonality, *Dukes*, 564 U.S. at 349 n.5, it asks whether the claims "of the representative parties are typical of the claims . . . of the class." Rule 23(a)(3). We have held that the claim is not typical if "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993) (typicality requirement was not satisfied where different groups of class members received different representations). As we clarified in *Sprague*, "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Id.* As such, "a class representative must be part of the class and possess the *same interest* and suffer the *same injury* as the class members." *Falcon*, 457 U.S. at 156 (emphasis added) (citation omitted).

Plaintiffs assert that the typicality and commonality of the class members claims are based on the common claim that Wayne County maintained a policy or custom of tolerating the manner in which strip searches were being conducted in the jail. We disagree.

Plaintiffs allege that they saw male officers in the Registry while they were being searched. Plaintiffs allege that the inmates were called derogatory names and told that they stink. Plaintiffs also allege that Corporal Graham operated a "snack shop" where she would sell sodas, chips and other snacks from a room adjacent to the Registry, and that male staff members would see naked women being strip searched when they would go in the back room to buy snacks. They further state that when they were on their menstrual cycles during searches, Corporal Graham would force them to remove their pads, and then force them to clean up their menstrual discharge from the floor.

Here, Plaintiffs would have to show that Wayne County's policy was unconstitutional for all inmates who have been strip searched. But the policy prohibited such conduct, which distinguishes this case from other blanket strip search cases. The district court treated each subclass as a separate class under Rule 23(c)(5), and limited the scope temporally to strip searches from 2014 to resolution of litigation.

The district court recognized that the constitutionality of each strip search will depend on an individualized determination of the balancing of the particular need for the search against the personal intrusion the search entailed. *See Williams v. City of Cleveland*, 907 F.3d 924, 935 (6th Cir. 2018). The district court failed to recognize that the same is also true for the municipal liability claims. Most obviously, due to the statute of limitations problem resolved earlier in this case, the putative class claims all accrued after November 14, 2014; but the named plaintiffs' claims all accrued before that date. Proof of indifference to violations of the County's written policies before

it implemented new directives in November and December 2013 would not also establish the existence of such a custom or policy afterward. As such, the class fails to meet the "commonality" and "typicality" requirements.

### ii. Adequacy of Representation

In order to show adequacy, the class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *Young*, 693 F.3d at 543. The named plaintiffs must have common interests with unnamed members of the class and must be able to rigorously prosecute the interests of the class through qualified counsel. *Id.*; *Senter*, 532 F.2d at 525. The adequacy of representation requirement can merge with the commonality and typicality requirements of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

Plaintiffs assert that they share common interests with the potential class members who are currently incarcerated and subject to strip searches. Other courts have found that actual conflicts arise between proposed class representatives who seek only injunctive relief and members of the proposed class who have already experienced personal injuries, which renders the representatives inadequate under Rule 23(a). *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 338–40 (S.D.N.Y. 2002).

We have also previously raised a standing issue in a case arising out of similar circumstances, involving the same defendant, and found that the no-longer incarcerated plaintiff did not have standing to seek injunctive and punitive relief for other incarcerated individuals. *See Sumpter v. Wayne County*, 868 F.3d. 473, 490-91 (6th Cir. 2017). The formerly-incarcerated lead plaintiffs cannot adequately represent a class that includes those incarcerated, because they are

simply not part of that class given that they were detained before November 2014.[1]  *See Dukes*, 564 U.S. at 348–49; *Great Rivers Coop. of Se. Iowa v. Farmland Indus.*, 120 F.3d 893, 899 (8th Cir. 1997); *see also* 7A Charles A. Wright et al., *Federal Practice & Procedure* § 1761, at 154–57 (3d ed. 2005).

In sum, the class fails to meet the certification requirements under Rule 23(a).

**B. Rule 23(b)**

To determine that the movant has met the requirements of Rule 23(b)(3), courts have a "duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Subdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues "predominate" over individual issues.  *See id.*  Courts consider a non-exhaustive list of factors to determine if Rule 23(b)(3)'s requirements are met:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

Where common issues predominate, the class members "will prevail or fail in unison." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).  A plaintiff's failure to prove an essential element of the claim will cause the class to "fail in its entirety." *Id.* at 469.  To clarify, a question is individual if the plaintiffs "will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice

---

[1] Separately, Wayne County asserts the named Plaintiffs cannot adequately represent the interests of all class members because the Prison Litigation Reform Act ("PLRA") requires the individual class members, apart from the named Plaintiffs, to exhaust their administrative remedies.  Because Plaintiffs have not met the Rule 23(a) requirements in the first place, we decline to address this question at this time.

for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S 442, 453 (2016) (citation omitted).

Wayne County contends the district court abused its discretion in certifying a class under Rule 23(b)(3) because individual claims will predominate over class claims but does not explain how, other than focus on damages. Wayne County also asserts that, because Plaintiffs cannot point to an "official policy or legislative enactment that was, on its face, unconstitutional and uniformly applied," individual inquiries would be necessary separate and apart from the common question of law and fact arising under *Monell*.

Plaintiffs assert that *Monell* clarifies that those constitutional deprivations pursuant to governmental "custom" are actionable even if such custom is not embodied in a "formal" or "official" written policy.[2] *See Monell v. Dep't of Soc Servs. of City of New York*, 436 U.S. 658, 690 (1978). Wayne County's written policy titled "Inmate Searches" defines strip searches as:

> An examination of an inmate's naked body for weapons, contraband, physical abnormalities, injuries and signs of illness. This includes a thorough search of all of the individual's clothing, which is not being worn. This search is to be conducted by an officer of the same gender as the inmate being searched and out of view of persons of the opposite gender.

R. 102-3, Page ID #3344-45, Wayne County Sheriff Document No. 14.4 (B). Wayne County's policies further provide that strip searches should be conducted "out of view of the public and other inmates" when possible. R. 102-3**,** Page ID #3345, WC pg. 959.

Under this policy, Plaintiffs have not shown that common issues predominate. First, the district court's opinion did not identify the legal theory on which Plaintiffs would rely to hold the County directly liable for the allegedly illegal strip searches. *See* Order, R.81, Page ID # 2253-55.

---

[2] Defendants assert that a municipal defendant such as Wayne County cannot be held liable under *Monell* absent a precedent finding a constitutional violation separate and apart from the violations alleged against Wayne County. We will not address the merits of this claim prior to a thorough review of class certification requirements.

*Monell* does not come with a single theory for holding the County liable on a custom or policy. Our cases instead identify many different *Monell* theories, including, for example, that a county has a formal policy that is unconstitutional; that a high-level county official engaged in the unconstitutional act; that the county failed to adequately train the employees who engaged in the unconstitutional act; that the county had a custom of inaction toward the unconstitutional act; and that the county ratified the unconstitutional act by failing to adequately investigate it. *See, e.g.*, *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020); *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). These *Monell* theories come with different elements and different evidentiary burdens. *Compare Pineda*, 977 F.3d at 495 (unconstitutional ratification), *with Thomas*, 398 F.3d at 429 (unconstitutional inaction).

Second, even if we consider that the class intends to establish their *Monell* claim on a so-called "inaction theory" of liability, predominance remains an issue. To succeed on this theory, we have stated that a plaintiff must show the following four elements (not including damages):

> (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas*, 398 F.3d at 429 (internal alterations and citation omitted).

A proper analysis must consider which of these elements can be established on a class-wide basis and which would require proof for each of the class members. Perhaps the first element—a clear pattern of unconstitutional strip searches—could be established for each of the four subclasses. *See id.* But that is the only element that could conceivably be resolved in this common fashion. Insurmountable timing issues, for example, would bar any class-wide treatment

of the second (notice) and third (deliberate indifference) elements. Wayne County must have had notice of the unconstitutional conduct and been deliberately indifferent to it at the time each class member allegedly suffered the unconstitutional search. *See id.* at 433-34. Yet what the County did and did not know and what actions it did or did not take in response will almost certainly vary from year to year, month to month, and even day to day. A class member in, say, 2019, might have a stronger or weaker claim of deliberate indifference than a class member in, say, 2014. After all, all of the strip searches that were allegedly unconstitutional and that happened in between those two times perhaps could provide additional evidence to show the County's notice and indifference to the conduct. But that evidence will be irrelevant to a class member's claim in 2014. Deliberate indifference in 2019 is not deliberate indifference in 2014. If anything, these class members have a conflict of interest.

Equally important, it is not enough to show generically that the County had a policy of acting with deliberate indifference toward the four types of unconstitutional strip searches (which were allegedly conducted in violation of its formal policies). Rather, a class member must also show that the class member was herself subjected to a "constitutional deprivation" in the way that she was searched. *See id.* at 429. And the class member must then show a "direct causal link" between the County's general policy of deliberate indifference and this constitutional violation. *Id.* In that respect, just because a policy exists does not mean it caused the particular class member's harm. As we have said, there is an "analytical distinction" between the general policy and the specific constitutional violation. *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996). "A municipality could be found to have a policy of failing to act in the face of repeated constitutional violations. But it could also be found to have acted reasonably, or even negligently, in a particular case, thus precluding liability." *Id.* at 508–09. So, this causation question would

have to be decided on an individual basis, too. *Cf. Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1235-37 (11th Cir. 2016); *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479-80 (8th Cir. 2016); *Stout*, 228 F.3d at 718.

The district court's reliance on *Tardiff v. Knox County* to support the conclusion that individualized determination of each constitutional violation would not defeat the predominance of the common questions was likewise misplaced. 365 F.3d 1, 3-6 (1st Cir. 2004). The class claims in *Tardiff* challenged the county's policies of conducting strip searches of all detainees without evaluation for individualized suspicion. *Id.* at 3. The common questions there included what the county's policies were and whether such policies were constitutional when the charges did not involve weapons, drugs, or violent felonies. *Id.* at 3-4. If there was such a blanket strip search policy, it could be expected to be the proximate cause of the challenged searches. And, if the blanket policy was found constitutional, the class claims would fail together. The same is not true here. One plaintiff's success in proving that acquiescence in the violation of the County's policies was a moving force behind her unconstitutional search would not establish the claims of the rest.

Lastly, as the district court itself recognized, the court would have to resolve each class member's damages, if any, on an individual basis. *See* Order, R.81, PageID # 2252-53. To be sure, despite *Behrand*'s rejection of a class on the basis of damages alone, 569 U.S. at 34, the circuit courts continue to recognize that individual damages determinations *alone* do not make individual issues predominate over common ones. *See, e.g.*, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988-89 (11th Cir. 2016) (citing cases). But damages are at least relevant to the predominance inquiry and can "defeat predominance when they are accompanied by 'significant individualized questions going to liability.'" *Brown*, 817 F.3d at 1240 (citation omitted). That is

case here. Some elements for proving the general policy under a *Monell* inaction theory, the unconstitutionality of the search in each class member's case, and the causal connection between the two would all have to be proven on an individual basis. When damages are added to the mix, individual issues predominate. The district court failed to apply the correct legal framework here and therefore abused its discretion.[3] The record is clear that class adjudication is not proper.

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** the class certification order and **REMAND** for further proceedings.

---

[3] Wayne County asserts that the classes as certified by the district court are "fail safe" because, according to the County, "[i]f the jury finds no policy or custom, then each Plaintiff would be free to pursue individual claims against Defendants" and furthermore that "if the municipal liability question fails, the class members would not be bound by the adverse judgment and could still pursue individual claims." Appellant's Brief, at 23-24. We need not address this issue because the class does not meet the certification requirements under Rule 23(a) and (b)(3).