MURDOCK, Justice.
 

 Charlette Ryan appeals, and 500 other individuals (“the listed objectors”) purport to appeal, from a class-certification order based on Rule 23(b)(2), Ala. R. Civ. P. This order was issued by the Shelby Circuit Court in conjunction with the settlement of litigation between John Patterson and Sue Patterson and Wayne’s Pest Control Com
 
 *14
 
 pany, Inc. (“Wayne’s”), a pest-control company that also offers lawn-care service.
 

 I. Facts and Procedural History
 

 On October 29, 1997, the Pattersons filed a complaint containing class allegations against Wayne’s and three individuals associated with Wayne’s, in the Shelby Circuit Court. The same day, the Patter-sons moved for a conditional class certification, which the circuit court granted pursuant to Rule 23(b)(2) and (b)(3), Ala. R. Civ. P. Wayne’s removed the case to federal court, which eventually remanded the case to the Shelby Circuit Court.
 
 [1]
 

 The Pattersons filed amended complaints on November 2, 1998, and June 28, 2005. In each complaint, the Pattersons alleged that they and a class of homeowners throughout Alabama had contracted with Wayne’s to perform termite pest control in their homes and that Wayne’s had uniformly failed: (1) to make proper initial termite treatments; (2) to make proper termite re-treatments; and (3) to conduct adequate inspections and reinspec-tions for termite damage and often to perform any reinspections at all, even though such inspections are required under § 2-28-9, Ala.Code 1975, and related regulations.
 
 [2]
 

 In 1998, Pestco Exterminating Company, Inc. (“Pestco”), declared bankruptcy. Wayne’s purchased Pestco’s customer information and the files of Pestco customers from the bankruptcy trustee. The customer list included Ryan and the listed objectors. Ryan and the listed objectors had participated in an action filed against Pestco similar to the one filed against Wayne’s by the Pattersons, and that action ultimately resulted in a classwide pro tanto settlement agreement. That settlement, however, explicitly did not discharge Wayne’s of any claims the class members may have had against Wayne’s. In January 2003, Ryan and the listed objectors sued Wayne’s in the Bessemer Circuit Court (“the Ryan action”), alleging claims identical to those made in the case against Pest-co and by the Pattersons against Wayne’s.
 

 In April 2000, Wayne’s filed its answer to the Pattersons’ complaint, and discovery followed. The circuit court referred the case to mediation in May 2005. On December 14, 2005, the Pattersons and Wayne’s entered into a classwide “Settlement Agreement and Release” (“the Patterson settlement”). The circuit court entered a preliminary order on December 27, 2005, approving the Patterson settlement and certifying the class according to Rule 23(b)(2), Ala. R. Civ. P. (“the Patterson class”). As to class certification, the court stated that Wayne’s had acted “in a uniform manner and on grounds generally applicable to the class in the connection with the provision of termite-related services and .... [a]s a result, the issuance of final equitable, injunctive and declaratory relief with respect to the class members as a whole is appropriate.” According to the preliminary order, the Patterson class consisted of
 

 “all persons or other entities who own property in Alabama who have entered into contracts or agreements with Wayne’s or for whom Wayne’s has taken over prior contracts of other pest control operators for the inspection for the existence or infestation of termites, and for the treatment, control and/or prevention
 
 *15
 
 of termites for such Alabama property, and/or for the repair of any damage caused by termites for their Alabama property, and/or for the renewals of any such services during the period commencing January 1, 1978 through [December 14, 2005].”
 
 [3]
 

 A court-approved notice of the Patterson settlement was mailed to 21,960 putative class members, including Ryan and the listed objectors. The notice informed putative class members of the nature of the case and the terms of the Patterson settlement. The notice also informed putative class members of their right to object to the terms of the Patterson settlement and of the manner in which such an objection needed to be presented to the circuit court and that a fairness hearing concerning the Patterson settlement would be held on March 8, 2006. The notice stated that objections must be in written form and that “[n]o individual Plaintiff Settlement Class Member can object on behalf of other Plaintiff Settlement Class Members.”
 

 Thereafter, Ryan, with the aid of her attorney Thomas F. Campbell,
 
 [4]
 
 filed an objection purportedly on behalf of herself, Chuck Metcalf, and “approximately 500 objectors” — the listed objectors — complaining that the settlement was not appropriate for Rule 23(b)(2) class certification. Six other written objections were filed with the circuit court, four of which were subsequently withdrawn in their entirety. As a result, three objections remained before the circuit court, representing a total of 10 individuals.
 

 As the notice for the Patterson settlement indicated, the circuit court held a fairness hearing on March 8, 2006. In that hearing, the circuit court questioned counsel for the Pattersons and for Wayne’s extensively regarding the propriety of certifying the class under Rule 23(b)(2) rather than Rule 23(b)(3). On July 6, 2006, the circuit court issued its “Settlement Approval Order and Final Judgment” that detailed the provisions of the settlement and explained its decision to certify the class action under Rule 23(b)(2). On the same date, the circuit court issued a corresponding “Memorandum Opinion” that provided its reasons for finding the settlement to be fair and adequate.
 

 The terms of the Patterson settlement provided that the Pattersons and the members of the putative class agreed to release all claims against Wayne’s based on its “failure to perform adequate annual termite reinspections, and the failure to perform adequate termite treatments (initial pre-construction treatments, post-construction treatments, and/or re-treatments) from January 1, 1978, through December 14, 2005,” except for “claims for personal injury not arising out of a failure to properly conduct annual termite rein-spections.” In exchange for the release of claims, Wayne’s agreed to provide several benefits to the class members.
 

 First, the Patterson settlement “enjoined and ordered [Wayne’s] to repair or (at the election of Plaintiffs) pay the reasonable costs to repair identified termite damage on Plaintiffs’ properties which was not previously identified as existing at the time [Wayne’s] agreed to provide termite
 
 *16
 
 services on such property (even for Plaintiffs whose contracts with Wayne’s do not obligate Wayne’s to make repairs).” This “termite-repair plan” covers damage identified within two years of the approval of the Patterson settlement. As the language of the Patterson settlement indicates, Wayne’s must repair the termite damage or reimburse class members for the repair of the termite damage, regardless of the type of contract a class member had with Wayne’s.
 
 [5]
 

 Second, as part of the termite-repair plan, the Patterson settlement “enjoined [Wayne’s] from asserting defenses that [it] might otherwise have to the termite damage claims of Plaintiffs” made within the two-year window provided in the settlement. Those defenses included: that the termite damage is “old damage,” that class members had altered the landscape of the subject property in such a way as to make the property susceptible to termite damage, that live active termites had not been identified by Wayne’s, that the subject property had suffered moisture damage, that a class member’s contract covered only re-treatment rather than damage repair, or that a class member’s contract with Wayne’s had expired.
 

 Third, the termite-repair plan provides that a plan administrator would process “properly supported claims within ninety (90) days of receipt of a Proof of Loss.” If a claimant disagrees with the amount to be paid for repairs or is otherwise dissatisfied with the repairs, the Patterson settlement provides for resolution of the dispute by mediation. If mediation proves unsuccessful, then a claimant can have the dispute settled either through arbitration (where the costs of arbitration are borne by the plan administrator) or through a bench trial in the Shelby Circuit Court.
 
 [6]
 

 Fourth, the termite-repair plan provides:
 

 “[I]n the event that an applicable federal or state agency with regulatory authority over Wayne’s termite operations issues a finding that Wayne’s or its predecessor [Pestco] has failed to treat a covered structure as required to satisfy termiticide label specifications or state requirements, Wayne’s agrees to make [the] specific remedial treatment ... at no charge to said class member.”
 

 Fifth, Wayne’s agreed in the Patterson settlement to change its future business practices. It agreed to perform annual termite inspections in accordance with Alabama Department of Agriculture “regulations, recommendations, and guidelines.” The Patterson settlement prohibits Wayne’s from allowing its employees to perform more than 12 inspections in an 8-hour shift. It requires Wayne’s to monitor the amount of time its employees spend on each inspection. It prohibits Wayne’s employees from engaging in “booster shot” spraying of a structure’s foundation, a tactic allegedly often used to distract customers from the inadequacy of termite inspections. The Patterson settlement requires employees to document whether the underside of the front porches of houses are
 
 *17
 
 accessible for inspection; if the underside of a porch is not accessible, Wayne’s must create such access, if possible, at a reduced cost to class members. The Patterson settlement requires Wayne’s to “create and/or supplement written training manuals, policies, procedures and guidelines to ensure that all employees and/or representatives of Wayne’s are adequately trained to perform termite-related services.” It also dictates that Wayne’s must provide notice by mail of upcoming inspections, and it must schedule inspections by telephone so that the interior of structures can be inspected.
 

 The Patterson settlement also provides class members with certain monetary benefits related to termite services. Wayne’s is required to “offer to convert all its existing liquid barrier termite customers to a termite monitoring and baiting system and will offer each customer who is not already on a termite monitoring and baiting system a coupon for a below-market price” for such a system. Wayne’s must waive the termite-inspection fee associated with the inspection during which the upgrade is made. Wayne’s must offer customers who have re-treatment contracts an upgrade to repair contracts and, in conjunction with doing so, must allow such customers a 40% discount in the cost of the re-treatment of the covered structure. The Patterson settlement also requires Wayne’s to provide a coupon for a $60 reduction in a one-year pest-control services contract to all class members who are not currently pest-control customers. Similarly, customers who are not lawn-care customers must be provided a coupon for a free initial lawn service (up to a maximum value of $60) if they enter into a one-year lawn-care contract.
 

 Finally, the Patterson settlement provides that Wayne’s will pay attorney fees for class counsel in an amount to be determined by the circuit court, not to exceed $400,000. Wayne’s also agreed to pay a class-representative fee of $5,000 to each class representative.
 

 Ryan filed a motion to alter, amend, or vacate the final judgment, which the circuit court subsequently denied. Ryan appeals, challenging the validity of the class certification under Rule 23(b)(2).
 

 II. Standard of Review
 

 “This Court applies an abuse-of-discretion standard of review to a trial court’s class-certification order, but we will review
 
 de novo
 
 the question whether the trial court applied the correct legal standard in reaching its decision to certify a class.
 

 “If the [plaintiffs] fail to meet the evidentiary burden as required by Rule 23, [Ala. R. Civ. P.,] then the order certifying the ... class[ ] constitutes an abuse of discretion by the trial court.
 

 ... The [plaintiffs] must establish all of the criteria set forth in Rule 23(a), Ala. R. Civ. P., and one of the criteria set forth in Rule 23(b).”
 

 Smart Prof l Photocopy Corp. v. Childers-Sims,
 
 850 So.2d 1245, 1248-49 (Ala.2002).
 

 In examining the several prerequisites for class certification contained in Rule 23, we must keep in mind that “Rule 23 of the Alabama Rules of Civil Procedure reads the same as Rule 23 of the Federal Rules, and we consider federal case law on class actions to be persuasive authority for the interpretation of our own Rule 23.”
 
 Adams v. Robertson,
 
 676 So.2d 1265, 1268 (Ala.1995).
 

 III. Discussion and Analysis
 

 At the outset, we note that Ryan does not question the fairness and adequacy of the Patterson settlement itself. She also does not dispute that the certified class meets the requirements of Rule 23(a): nu-merosity, commonality, typicality, and ade
 
 *18
 
 quacy of representation. Ryan challenges only the validity of the class certification under Rule 23(b)(2). In fact, she suggests that class certification may be proper in this instance under Rule 23(b)(3).
 

 Rule 23(a) provides:
 

 “One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.”
 

 Rule 23(b) provides:
 

 “An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 

 “(1) the prosecution of separate actions by or against individual members of the class would create a risk of
 

 “(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 

 “(B) adjudications with respect to individual members of the class which would as a practical matter be disposi-tive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 

 “(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 

 “(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.”
 

 A proper understanding of the intended operation of Rule 23(b) must take into consideration certain provisions of Rule 23(c). Rule 23(c)(2) provides:
 

 “In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.”
 

 No corresponding provision exists allowing Rule 23(b)(1) and (b)(2) class members to opt out of a putative class action.
 

 “[I]n a class action brought under Rule 23(b)(3), the members of the class are entitled to ‘opt out’ of the class action
 
 *19
 
 and pursue a separate lawsuit.
 
 See
 
 Rule 23(c). Class members in a Rule 23(b)(1) or 23(b)(2) lawsuit do not have the choice of opting out of the class action.”
 

 Adams,
 
 676 So.2d at 1270. Thus, Ryan’s arguments concern the fact that this action involves a non-opt-out class under Rule 23(b)(2).
 

 A. Acts or Refusals to Act on Grounds Generally Applicable to the Class
 

 Rule 23(b)(2) requires that “the party opposing the class [i.e., Wayne’s] has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.”
 

 “By its terms, ... Rule 23(b)(2)[, Fed. R.Civ.P.,] imposes two independent but related requirements. In the first place, the defendants’ actions or inactions must be ... generally applicable to all class members. ... The latter half of Rule 23(b)(2) requires that final injunctive relief be appropriate for
 
 the class as a whole.”
 

 Shook v. Board of County Comm’rs of County of El Paso,
 
 543 F.3d 597, 604 (10th Cir.2008).
 

 Ryan notes that “[sjubsection (b)(2) was ‘intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices.’ ”
 
 Holmes v. Continental Can Co.,
 
 706 F.2d 1144, 1155 (11th Cir.1983) (quoting
 
 Penson v. Terminal Transport Co.,
 
 634 F.2d 989, 993 (5th Cir.1981)). While this is true, the Notes of Advisory Committee on 1966 Amendments following Federal Rule 23 explicitly state that
 

 “[sjubdivision (b)(2) is not limited to civil-rights cases. Thus an action looking to specific or declaratory relief could be brought by a numerous class of purchasers, say retailers of a given description, against a seller alleged to have undertaken to sell to that class at prices higher than those set for other purchasers, say retailers of another description, when the applicable law forbids such a pricing differential.”
 

 Thus, the common characteristic among the class members need not be inherent, i.e., race, gender, disability, and may even be economic in nature.
 

 Nonetheless, “Rule 23(b)(2) demands'a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification.”
 
 Shook,
 
 543 F.3d at 604.
 

 “ ‘Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. ... Although the interests of the different members of a (b)(2) class are by no means identical,] the substantial cohesion of those interests makes it likely that representative members can adequately represent the interests of absent members and that the need for and interest in individual representation will be minimal.’ ”
 

 Holmes,
 
 706 F.2d at 1155 n. 8 (quoting Note,
 
 Notice in Rule 23(b)(2) Class Actions for Monetary Relief:
 
 Johnson v. General Motors Corp., 128 U. Pa. L.Rev. 1236, 1252-53 (1980)).
 
 See also Allison v. Citgo Petroleum Corp.,
 
 151 F.3d 402, 412 (5th Cir.1998) (stating that “[t]he (b)(2) class action ... was intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary”).
 

 Ryan points to pronounced differences among the class members in terms of the injuries they sustained. Some class members have repair contracts while others have only re-treatment contracts; some never received proper initial treatments while others did not receive proper re-treatments; and some received inadequate
 
 *20
 
 reinspections while other received no rein-spections at all. Moreover, some class members sustained termite damage while others did not. Further, some class members continue to be customers of Wayne’s while others are not. Under such circumstances, the interests of these class members likely would differ in terms of the remedies they desire. For example, some need repairs for termite damage while others simply need reimbursement for a contract that was not performed. In short, it is undeniable that the members of the Patterson class did not suffer identical injuries that can be remedied through class-wide injunctive relief.
 

 B. Predominance of Relief in the Patterson Settlement
 

 Given the varying injuries and interests of the class members, it should come as no surprise that the Patterson settlement provides both injunctive and monetary relief.
 
 See Allison,
 
 151 F.3d at 413 (“Monetary remedies are more often related directly to the disparate merits of individual claims. ... As a result, a class seeking substantial monetary remedies will more likely consist of members with divergent interests.”). “[Cjlose scrutiny is necessary if money damages are to be included in any mandatory class in order to protect the individual interests at stake ....”
 
 Coleman v. General Motors Acceptance Corp.,
 
 296 F.3d 443, 448 (6th Cir. 2002). This Court has observed that “[a]s a general rule, certification of a class pursuant to Rule 23(b)(2) is improper if the primary relief sought is money damages,”
 
 Compass Bank v. Snow,
 
 823 So.2d 667, 678 (Ala.2001); it is also true that “the fact that a Rule 23(b)(1) or (b)(2) suit may ultimately result in a monetary recovery from a defendant does not prevent certification under those subdivisions.”
 
 First Alabama Bank of Montgomery, N.A v. Martin,
 
 425 So.2d 415, 423 (Ala.1982).
 

 The United States Court of Appeals for the Fifth Circuit observed in
 
 Allison
 
 that
 

 “there is little discussion by appellate courts as to what it means for a particular form of relief to be ‘predominant.’ The Advisory Committee Notes make no effort to define or explain the concept. Interpreting the term literally, predominant means ‘controlling, dominating, [or] prevailing.’
 
 Webster’s Third New International Dictionary
 
 1786 (1993). But how that translates into a workable formula for comparing different types of remedies is not at all clear.”
 

 151 F.3d at 411-12. Despite the difficulty, the
 
 Allison
 
 court devised a standard for determining which kind of relief — injunc-tive or monetary — predominates in a putative class action certified under Rule 23(b)(2), a standard this Court adopted in
 
 Snow,
 
 823 So.2d at 678, and reaffirmed in
 
 Funliner of Alabama, L.L.C. v. Pickard,
 
 873 So.2d 198, 208-09 (Ala.2003). The
 
 Allison
 
 court concluded:
 

 “[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. By incidental, we mean damages that flow directly from liability to the class
 
 as a whole
 
 on the claims forming the basis of the injunctive or declaratory relief.
 
 See
 
 Fed.R.Civ.P. 23(b)(2) (referring only to relief appropriate ‘with respect to the class as a whole’). Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not
 
 *21
 
 dependent in any significant way on the intangible, subjective differences of each class member’s circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual’s case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.”
 

 Allison,
 
 151 F.3d at 415 (some citations omitted). In other words, there are at least three factors to consider in determining whether damages are incidental for purpose of class certification: “(1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such damages can be computed by objective standards, and not standards reliant upon intangible, subjective differences of each class member’s circumstances; and (3) whether such damages would require additional hearings to determine.” 32B Am.Jur.2d
 
 Federal Courts
 
 § 1710 (2007).
 

 In their briefs on appeal, the parties dispute whether various upgrades in pest-control services and various discounts constitute injunctive or monetary relief.
 
 See generally Adams v. Robertson,
 
 676 So.2d 1265 (Ala.1995). In this case, however, we find dispositive the extent to which the settlement requires individualized determinations of damage. As the United States Court of Appeals for the Sixth Circuit has explained, a critical factor “in determining whether injunctive relief predominates in a Rule 23(b)(2) class ... is whether the compensatory relief requested requires individualized damages determination or is susceptible to calculation on a classwide basis.”
 
 Coleman,
 
 296 F.3d at 448. If nothing else, the mechanisms provided in the Patterson settlement for customers to file their termite-damage claims distinguishes this case from
 
 Adams
 
 and demonstrates that the termite-repair plan constitutes monetary relief. The customer who has a claim for termite damage must submit a “properly supported claim[ ]” to the plan administrator, who will process the claim within 90 days. The plan administrator is necessary because the amount of the claim for each customer will vary based on the extent of the termite damage sustained by each customer’s structure. The individualized nature of each claim for termite damage indicates that the relief is monetary in nature and not classwide in-junctive relief.
 
 See, e.g., Holmes,
 
 706 F.2d at 1156 (stating that “ ‘money damages are directly related to the disparate merits of individual claims and are not generally applicable to the claims of the class as a whole’ ” (quoting Gerald E. Rosen,
 
 Title VII Classes and Due Process: To (b)(2) or Not to (b)(3),
 
 26 Wayne L.Rev. 919, 923 (1980))).
 

 Moreover, if the customer disagrees with the plan administrator over the amount awarded for the termite damage, the Patterson settlement provides a system of hearings and appeals. Although this provision is certainly intended to help class members receive just compensation for termite-related property damage, the hearings and appeal system further reflect the individualized nature of the relief available under the termite-repair plan. As the
 
 Allison
 
 court observed: “Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual’s case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.” 151 F.3d at 415. Though the Pattersons and Wayne’s insist that the forfeiture of defenses by Wayne’s in the settlement means that the appeals process does not concern liability,
 
 *22
 
 the fact that individual computations and additional hearings are required to effect the relief provided by the termite-repair plan militates against finding that the relief constitutes incidental damages suitable for Rule 23(b)(2) certification.
 

 One reason that members of classes certified under Rule 23(b)(2) typically do not have the right to opt out of the action is that
 

 “[o]pting out of a (b)(2) suit for injunc-tive relief would have little practical value or effect. Even class members who opted out could not avoid the effects of the judgment. A (b)(2) injunction would enjoin all illegal action, and all class members would necessarily be affected by such broad relief.”
 

 Holmes,
 
 706 F.2d at 1157. Based on the test devised in
 
 Allison
 
 and adopted by this Court, the relief provided in the Patterson settlement as a whole is not of the nature contemplated for Rule 23(b)(2) class certification.
 
 [7]
 
 The members of the Patterson class
 
 as a whole
 
 are not automatically entitled to the damages available in the Patterson settlement. Instead, the damages available under the termite-repair plan are dependent upon the individual differences between the amount of termite damage sustained by each class member submitting a claim. The damages claims under the termite-repair plan will require additional hearings if the claimant and the plan administrator disagree on the amount to which the claimant is entitled.
 

 IV. Conclusion as to Merits
 

 Based on the foregoing, we conclude that the circuit court erred in certifying the Patterson class under Rule 23(b)(2), Ala. R. Civ. P. Accordingly, we reverse the circuit court’s certification of the Patterson class and remand the case to the circuit court for further proceedings.
 
 [8]
 

 V. Motions to Strike Listed Objectors
 

 Both the Pattersons and Wayne’s have filed motions asking this Court to strike the listed objectors as appellants in
 
 *23
 
 this case because: (1) the Ryan action has not been certified as a class action and Ryan, therefore, has not been certified to represent the listed objectors, (2) the notice of the Patterson settlement explicitly stated that individual class members could not object on behalf of other class members, and (3) an affidavit filed by an attorney for the Pattersons indicated that three of the listed objectors were not even aware that Ryan had filed an objection on their behalf. The circuit court observed in footnote 2 of its “Memorandum Opinion,” which accompanied its “Settlement Approval Order and Final Judgment,” that the objection in question “was purportedly filed on behalf of Charlette Ryan and Chuck Metcalf, along [with] all the ‘Ryan Plaintiffs’ (defined as ‘approximately 500 other Plaintiffs’ in a separate pending lawsuit),” and that “even
 
 if
 
 an objection
 
 had
 
 properly been raised by an additional 500 class members, the percentage of objectors (many of them being two family members representing one termite contract) would still be less than 2.4% of the nearly 22,000 class members.” (Emphasis in original.) This observation indicates that the circuit court did not consider Ryan’s objection to properly represent a viable objection for the listed objectors. Given the unequivocal language in the notice for the Patterson settlement that each objection must be made by the individual class member and the fact that the circuit court did not deem the objections of the listed objectors to be properly filed, we grant the motions to strike the listed objectors as appellants to this action.
 

 MOTIONS TO STRIKE GRANTED; REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . The federal district court vacated the state court's conditional class certification.
 

 [2]
 

 . Section 2-28-9, Ala.Code 1975, requires all businesses involved in "subterranean termite eradication and control work” to "make an annual inspection of each job done during the term of the contract.”
 

 [3]
 

 . The final definition of the class explicitly excluded 11 individuals, most of whom had filed objections to the Patterson settlement with the circuit court.
 

 [4]
 

 . Campbell had been the Pattersons attorney in this litigation from its inception until he withdrew as their counsel in August 1999. The circuit court eventually barred Campbell from appearing in this action on behalf of Ryan because of his previous representation of the Pattersons in this litigation.
 

 [5]
 

 . Class members had one of two types of contracts with Wayne's: a repair contract or a re-treatment contract. Every contract, regardless of type, required annual inspections of the subject property. Repair contracts provided that Wayne’s would repair termite damage discovered upon inspection at no cost to the customer, provided no defenses applied to the damage. Re-treatment contracts provided that Wayne's would re-treat termite-damaged areas discovered upon inspection, but Wayne's would not be obligated to repair said damage.
 

 [6]
 

 . This provision for dispute resolution is as modified by the parties during the final fairness hearing, which was later approved by a written order of the circuit court.
 

 [7]
 

 . We recognize that not every court has adopted the
 
 Allison
 
 approach. For example, the United States Court of Appeals for the Second Circuit has rejected
 
 Allison
 
 because it "foreclosed] Rule 23(b)(2) certification in all actions seeking actual damages 'even if the class-wide injunctive relief is the form of relief in which the plaintiffs are primarily interested.' "
 
 Parker v. Time Warner Entm’t Co.,
 
 331 F.3d 13, 20 (2d Cir.2003) (quoting
 
 Robinson v. Metro-North Commuter R.R.,
 
 267 F.3d 147, 163 (2d Cir.2001)). Instead, the Second Circuit requires its courts to consider the following in determining whether Rule 23(b)(2) certification is proper:
 

 "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the in-junctive or declarator)' relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.”
 
 Robinson,
 
 267 F.3d at 164. Under these criteria, it seems clear that the injunctive relief requiring Wayne’s to improve its pest-control inspection and treatment services is reasonably necessary and appropriate, but it is far from clear that the Pattersons would have brought this action solely to obtain the injunc-tive relief, especially given the fact that the first request in the "prayer for relief” in the original complaint was for "[d]isgorgement of defendants’ unjust enrichment, or, in the alternative, compensatory, incidental and consequential damages (including damages for emotional distress) against all defendants.” In any event, this Court finds the
 
 Allison
 
 approach to fairly reflect the interests of class members seeking certification under Rule 23(b)(2).
 

 [8]
 

 . Our result pretermits the need to discuss Ryan’s third argument concerning whether the certification of this class violated her right to due process of law under the 14th Amendment to the United States Constitution.