PER CURIAM.
This is the third time these parties have been before this Court. See Ex parte CIT Commc’n Fin. Corp. (No. 1040529, June 24, 2005), 926 So.2d 381 (Ala.2005) (table), and Ex parte CIT Commc’n Fin. Corp., 897 So.2d 296 (Ala.2004). CIT Communication Finance Corporation (“CIT”) now appeals the Mobile Circuit Court’s order certifying, pursuant to Rule 23(b)(3), Ala. R. Civ. P., a nationwide class of persons and entities who entered into agreements with CIT for the lease of office equipment and who incurred, pursuant to such leases, insurance charges within six years prior to June 11, 2003, the date the complaint in this case was filed. We affirm the trial court’s certification order.

Facts and Procedural History

CIT leases office equipment and related products to various entities across the country. In August 1998, the law firm of McFadden, Lyon & Rouse, L.L.C. (“McFadden”), entered into a standard lease agreement with CIT, pursuant to which McFadden leased telephone equipment for 60 months at the rate of $272.22 per month. The lease agreement required McFadden to maintain insurance on the telephone equipment but also provided that, if McFadden failed to provide proof of insurance to CIT, CIT could choose to obtain insurance on the equipment. More specifically, the lease agreement provided:
*117 “You are required to provide and maintain insurance related to the Equipment ....
[[Image here]]
“6. INSURANCE. You will provide and maintain at your expense (a) property insurance against the loss, theft, or destruction of, or damage to, the Equipment for its full replacement value, naming us as loss payee, and (b) public liability and third party property insurance, naming us as an additional insured. You will give us certificates or other evidence of such insurance when requested. Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we will be given 30 days advance notice of any cancellation or material change of such insurance. If you do not give us evidence of insurance acceptable to us, we have the right, but not the obligation, to obtain insurance covering our interest in the Equipment for the term of this Lease, including any renewals or extensions, from an insurer of our choice, including an insurer that is our affiliate. We may add the costs of acquiring and maintaining such insurance and our fees for our services in placing and maintaining such insurance (collectively, ‘Insurance Charge’) to the amounts due from you under this Lease. You will pay the Insurance Charge in equal installments allocated to the remaining Lease Payments. If we purchase insurance, you -will cooperate with our insurance agent with respect to the placement of insurance and the processing of claims. Nothing in this Lease will create an insurance relationship of any type between us and any other person. You acknowledge that we are not required to secure or maintain any insurance, and we will not be liable to you if we terminate any insurance coverage that we arrange. If we replace or renew any insurance coverage, we are not obligated to provide replacement or renewal coverage under the same terms, costs, limits, or conditions as the previous coverage.”
(Emphasis added.) The lease agreement also contained a choice-of-law clause providing that the agreement was to be governed by the laws of the State of New Jersey.
Shortly after entering into the lease agreement with CIT, McFadden received a letter from CIT dated August 13, 1998, which stated, in pertinent part:
“Inside the enclosed ‘Infopack’ you will find an information card titled ‘Insuring Leased Equipment,’ which explains AT & T Credit Corporation’s[1] Property Insurance Program. Under this program, the cost of insuring the leased equipment is included as an additional charge in each of your monthly lease invoices. However, according to the provisions of your lease agreement, you may obtain and provide proof to us of your own property insurance coverage, naming AT & T Credit Corporation as loss payee during the term of your lease....”
The “Infopack” contained the following provisions:

“Points To Remember About Your AT & T Leasing Contract:

[[Image here]]
“Insurance: The customer (lessee) is required to provide and maintain insurance coverage against the loss, theft, damage or destruction of leased equipment for its full replacement value, naming AT & T Credit Corporation (lessor) as loss payee. The customer is also *118 required to have general liability insurance.
[[Image here]]
“Insuring Leased Equipment [:]
“One of the terms of the AT & T Credit Corporation Lease Agreement requires that you provide and maintain insurance against the loss, theft, damage, and destruction of the leased equipment. Such coverage must be for the full replacement value and name AT & T Credit Corporation as a loss payee.
“We have acquired our own property insurance policy through our leased equipment insurance manager, Lease Insurance Agency Services Corporation, to protect the leased equipment. Our property coverage will be used to satisfy the lease coverage requirement if you do not provide proof of your own property insurance within the time required.”
The “Infopack” also contained information relating to the types of losses covered by the CIT-provided insurance, as well as coverage features and the monthly charges for the coverage.
McFadden later received a letter from CIT dated September 4, 1998, which stated, in pertinent part:
“As you know, one of the terms of our Lease Agreement requires that you maintain insurance against loss, damage, destruction, and theft for the replacement value of the leased equipment, naming AT & T Credit Corporation as ‘loss payee.’ You can satisfy this requirement by obtaining your own insurance or by taking advantage of the coverage which AT & T Credit has arranged for the equipment under its own insurance policy. You can exercise either of the options described below.
“1. Insure Equipment Under AT & T Credit’s Property Insurance Policy. Since many customers prefer not to obtain their own coverage on the leased equipment, AT & T Credit has procured its own coverage which satisfies the property insurance requirement contained in your lease.... Unless you decide to obtain your own policy, the equipment is automatically covered under AT & T Credit’s policy as of the date you accept the equipment. ... If you elect this option by not acquiring your own insurance policy, we’ll add $15.15, which includes the insurance premium and other related charges, to each of your monthly lease invoices.
“2. Use Your Own Insurance Carrier. If you wish to use your own property insurance on the leased equipment, simply have your agent or broker call our leased equipment insurance manager, Lease Insurance Agency Services Corporation.... If your agent or broker does not confirm your property insurance coverage on the equipment within 30 days of the date of this letter, the equipment will be insured under AT & T Credit’s property insurance policy.”
McFadden never provided CIT with proof that it had acquired its own insurance and, therefore, was billed a monthly charge of $15.15 for the CIT-placed insurance. McFadden paid the monthly charge without objection for the term of the lease.
The CIT-placed insurance, according to McFadden, consisted of two insurance programs: (1) the Premier program and (2) the American Bankers program. In November 1988, CIT had entered into an agreement with Premier Lease and Loan Services (“Premier”)[2] whereby Premier *119 became the manager of the CIT-placed insurance program. As manager, Premier had the authority to place and to cancel Premier coverage for leased CIT equipment, to bill and to collect insurance charges from CIT customers, and to administer reports of loss or damage to the CIT equipment. McFadden states that Premier charged CIT a fee for these services that was passed on to CIT customers. Also, pursuant to the agreement between Premier and CIT, Premier appointed CIT as its subcontractor to perform certain services, such as collecting and transmitting of customer information to Premier and billing, collecting, and remitting of the insurance charges.
McFadden states that, in addition to the monthly charge for the leased equipment, the CIT customer was billed for an insurance premium, a finance charge by a third-party lender, and an administration fee charged by Premier for services it performed as manager of the insurance program. McFadden states that Premier, pursuant to the subcontract with CIT, returned the majority of the administration fee to CIT, so that CIT received $4.00 per month per lease of the administration fee as a “subcontract fee” and Premier retained only 12.5 cents of the administration fee. McFadden alleges that the $4.00 subcontract fee charged by CIT had no direct correlation to CIT’s actual costs of performing its duties under its subcontract with Premier.
McFadden contends that CIT profited from the Premier program. The insurance provided to customers under that program was underwritten by National Union Fire Insurance Company (“National”). National entered into a reinsurance agreement with Equipment Insurance Company (“EIC”), a wholly owned subsidiary of CIT, allegedly passing the entire risk of loss to EIC. However, according to McFadden, EIC then returned to National the majority of the risk under the Premier program.
In November 1998, CIT entered into an agreement with American Bankers Insurance Company of Florida (“American Bankers”), by which American Bankers agreed to provide insurance coverage for CIT’s leased equipment.[3] When American Bankers took over CIT’s insurance program, there was no change in the amount customers were charged for the insurance. Initially, the administration fee and the insurance premium were combined into one charge designated on a customer’s invoice as the “Insurance Charge.” McFadden alleges that CIT later directed American Bankers to “break out the fee separately from the premium” and to remit to CIT a $6.00 administration fee while reducing the insurance premium by the same amount. According to McFadden, the $6.00 administration fee had no direct correlation to CIT’s costs of performing its duties under the American Bankers program. Further, according to McFadden, CIT has acknowledged that the administration fee would be impossible to justify.
McFadden contends that, under the American Bankers program, American Bankers transferred the risk that it insured to Highlands Insurance Company (“Highlands”), a wholly owned subsidiary of CIT. Then, according to McFadden, Highlands returned the majority of the risk to American Bankers, but retained most of the premium paid under the policy.
McFadden, in its individual capacity and as the representative of a putative class, sued CIT, alleging that CIT had imposed on it and the putative class insurance *120 charges that exceeded the customary costs of insurance and the costs associated with procuring and administering the insurance. McFadden alleged that the charges for the insurance were unreasonable, unnecessary, and excessive; that CIT’s practice of charging excessive and unreasonable fees for the placement of insurance was intended to generate increased profits; and that the practice of charging excessive fees was not disclosed in or authorized by the terms of the lease. McFadden asserted that CIT’s actions constituted a breach of the lease agreement and violated the implied covenant of good faith.[4] McFadden explained the latter claim in more detail:
“As a party granted the contractual right to purchase insurance on the leased property, the right carried with it the obligation of good faith and fair dealing, and because [CIT] made certain affirmative statements promoting the sale of the insurance, [CIT] was obligated to state all material facts, including the facts related to the pricing of insurance and the hidden profits taken by [CIT] through its various reinsurance agreements and other contractual agreements.”
CIT answered the complaint, generally denying the material averments and asserting certain affirmative defenses, including waiver, estoppel, ratification, acquiescence, and voluntary payment. CIT also moved the trial court to dismiss McFadden’s class claims because, it argued, McFadden had failed to state a claim upon which relief could be granted. The trial court denied CIT’s motion to dismiss the class claims. CIT then amended its answer to respond to McFadden’s class allegations.
McFadden moved the trial court to certify, pursuant to Rule 28(b)(3), Ala. R. Civ. P., a nationwide class of “persons and entities who have or have had a lease agreement serviced by [CIT], and who incurred insurance charges [for the CIT-placed insurance] within six years of the filing of this complaint.” McFadden also sought certification of two subclasses: (1) those customers with insurance placed through the Premier program, and (2) those with insurance placed through the American Bankers program.
CIT filed a motion for a summary judgment. McFadden moved the trial court to continue any hearing on CIT’s motion until after the resolution of the class-certification issue. The trial court granted McFadden’s motion.
CIT filed a brief and evidentiary submission in opposition to class certification. Also, pursuant to § 6-5-641 (d), Ala. Code 1975, it requested an evidentiary hearing. After an evidentiary hearing, the trial court entered an order finding that McFadden had satisfied the threshold requirements for class certification pursuant to Rule 23(a), Ala. R. Civ. P., and that class certification as requested by McFadden was proper under Rule 23(b)(3), Ala. R. Civ. P. The trial court certified the following claims for class treatment: (1) the claim that CIT breached the lease agreement during the Premier program by retaining fees not authorized by the lease agreement; (2) the claim that CIT breached the lease agreement during the American Bankers program by charging an unreasonable fee in violation of New Jersey law; and (3) the claim that CIT breached the implied covenant of good faith in the manner in which it established and administered the insurance programs. CIT appeals that certification.

*121
Standard, of Review

“ ‘This Court applies an abuse-of-discretion[5] standard of review to a trial court’s class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision to certify a class.’ ” Alfa Life Ins. Corp. v. Hughes, 861 So.2d 1088, 1094 (Ala.2003) (quoting Smart Prof'l Photocopy Corp. v. Childers-Sims, 850 So.2d 1245, 1248 (Ala.2002)). The party seeking certification has the burden of proving that it is entitled to class certification. § 6-5-541(e), Ala.Code 1975.
“[A]n abuse of discretion in certifying a class action may be predicated upon a showing by the party seeking to have the class-certification order set aside that ‘the party seeking class action certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of Rule 23.’ ”
Compass Bank v. Snow, 823 So.2d 667, 672 (Ala.2001) (quoting Ex parte Green Tree Fin. Corp., 684 So.2d 1302, 1307 (Ala.1996)).

Issues

CIT raises three main issues in its appellate brief. First, CIT argues that the trial court did not perform the required rigorous, analysis before certifying the class. Second, CIT argues that the trial court erred by failing to address McFadden’s standing as a threshold issue to class certification. Third, CIT argues that the trial court erred in finding that McFadden had satisfied the Rule 23(a) and Rule 23(b)(3), Ala. R. Civ. P., requirements for class certification.

Analysis

I.

CIT first argues that the trial court’s certification order is due to be reversed because, according to CIT, the trial court failed to conduct the rigorous analysis required before a class may be certified. See § 6-5-641 (e), Ala.Code 1975 (“When deciding whether a requested class is to be certified, the court shall determine, by employing a rigorous analysis, if the party ... requesting class certification [has] proved its ... entitlement to class certification under Ala. R. Civ. P. 23.”). This Court has stated:
‘“[C]lass actions may not be approved lightly and ... the determination of whether the prerequisites of Rule 23 have been satisfied requires a “rigorous analysis.” ’ Ex parte Citicorp Acceptance Co., 715 So.2d 199, 203 (Ala.1997); see also § 6-5-641, Ala.Code 1975. The plaintiff must offer sufficient evidence of the Rule 23 criteria; this evidence must be referenced in the trial court’s order before class certification is proper.”
Bill Heard Chevrolet Co. v. Thomas, 819 So.2d 34, 40 (Ala.2001).
In Bill Heard, we directed the trial court to vacate its class-certification order, holding that the trial court had not conducted the required rigorous analysis. As part of that decision, we noted that
“the nine-page order conditionally granting class certification was drafted, not by the trial judge, but by counsel for the plaintiffs. While this fact, standing alone, does not compel the conclusion that the trial court did not conduct a rigorous analysis of the evidence presented in support of class certification, *122 we strongly discourage this practice in the context of class-certification orders. We note that § 6-5-641(e)[, Ala.Code 1975,] and Rule 23, Ala. R. Civ. P., impose upon the trial judge the duty to conduct a rigorous analysis, and we hold that this duty is nondelegable, even in the case of a conditional certification.”
Bill Heard, 819 So.2d at 41.
CIT argues that, like the order in Bill Heard, the trial court’s class-certification order in this case does not represent a rigorous analysis of the requirements for class certification, because it was drafted by McFadden’s counsel and adopted verbatim by the trial court. However, as this Court stated in Bill Heard, the fact that the order was drafted by plaintiffs counsel is not enough, by itself, to demonstrate that the trial court failed to conduct a rigorous analysis. Although we noted in Bill Heard the trial court’s failure to draft its own order, our holding in that case was based on other factors. More specifically, we emphasized “the lack of any opportunity for [the defendants] to present their evidence in opposition to the assertions contained in [the] proposed order.” 819 So.2d at 41. We also noted that the order “fail[ed] to identify the elements of the four claims being certified for class treatment and fail[ed] to discuss in a cogent manner how those elements bear upon the criteria set forth in Rule 23.” 819 So.2d at 41.
In this case, however, the trial court conducted an evidentiary hearing, and CIT was given the opportunity to present, both in writing and at the hearing, its arguments and evidence in opposition to class certification. Further, the order entered by the trial court contains a detailed discussion of each of the Rule 23 requirements. Therefore, our decision in Bill Heard is distinguishable. Although we reiterate that the practice of having counsel for a party draft the class-certification order is “strongly discourage[d],” 819 So.2d at 41, we decline to order the vacation of the trial court’s class-certification order on this ground.

II.

CIT next argues that the trial court’s class-certification order is due to be reversed because, according to CIT, McFadden does not have standing to bring the claims it asserts. More specifically, CIT argues that McFadden does not have standing because, CIT contends, McFadden cannot demonstrate any breach of its lease agreement with CIT or any breach of the duty of good faith.
This Court recently stated:
“ ‘When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999)....
“ ‘[S]tanding turns on whether the party has suffered an actual injury and whether the injury is to a legally protected right.’ Carey v. Howard, 950 So.2d 1131, 1135 (Ala.2006).... [A]n ‘actual or imminent, particularized, concrete, and palpable injury ... is required for a showing of standing.’ Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1261 (Ala.2004) (See, J., concurring specially).”
Riley v. Pate, 3 So.3d 835, 838 (Ala.2008). Further, “ ‘[i]f a named plaintiff has not been injured by the wrong alleged in the complaint, then no case or controversy is presented and the plaintiff has no standing to sue either on his own behalf or on behalf of a class.’ ” Kid’s Care, Inc. v. Alabama Dep’t of Human Res., 843 So.2d 164, 167 (Ala.2002) (quoting Ex parte Pru *123 dential Ins. Co. of America, 721 So.2d 1135, 1137 (Ala.1998)).
McFadden has alleged that CIT’s methods of assessing the fees charged for CIT-placed insurance under the two programs resulted in its payment of unreasonable and excessive fees that were not permitted by its lease agreement. It also argues that CIT’s behavior in charging the fees violated the duty of good faith implied in the lease agreement. McFadden’s alleged injuries, which it claims were caused by wrongs committed by CIT, are not speculative or hypothetical, but appear, instead, to be “ ‘actual, ... particularized, concrete, and palpable.’ ” Riley, 3 So.3d at 838. Moreover, it appears that McFadden’s injuries would be redressed by a decision in McFadden’s favor. Therefore, we hold that McFadden has standing to bring its claims, and we decline to reverse the trial court’s class-certification order on this ground.[6]

III.

CIT next argues that, if this Court determines that McFadden has standing to bring its claims, the trial court’s order is due to be reversed because, CIT argues, McFadden has not satisfied the Rule 23(a) and (b)(3) requirements for class certification.

A. Rule 23(a) Prerequisites

Rule 23(a), Ala. R. Civ. P., provides:
“(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.”
The four Rule 23(a) requirements “are commonly referred to respectively as (1) ‘numerosity,’ (2) ‘commonality,’ (3) ‘typicality,’ and (4) ‘adequacy.’ ‘Numerosity and commonality concern the entire class, while typicality and adequacy concern the nexus of the named class representatives with the class itself.’ ” Atlanta Cas. Co. v. Russell, 798 So.2d 664, 666 (Ala.2001) (quoting Warehouse Home Furnishing Distribs., Inc. v. Whitson, 709 So.2d 1144, 1148 (Ala.1997)).
CIT does not dispute the trial court’s finding that McFadden satisfied the nu-merosity and adequacy requirements. Therefore, we limit our discussion of Rule 23(a) to the elements of commonality and typicality.

i. Commonality

“In examining the several prerequisites for class certification contained in Rule 23, we must keep in mind that ‘Rule 23 of the Alabama Rules of Civil Procedure reads the same as Rule 23 of the Federal Rules, and we consider federal case law on class actions to be persuasive authority for the interpretation of our own Rule 23.’ ” Ryan v. Patterson, 23 So.3d 12, 17 (Ala.2009) (quoting Adams v. Robertson, 676 So.2d 1265, 1268 (Ala.1995)). The United States Court of Appeals for the Fifth Circuit has said:
“The threshold of ‘commonality’ is not high. Aimed in part at ‘determining whether there is a need for combined *124 treatment and a benefit to be derived therefrom,’ In re Agent Orange Product Liability Litigation, 506 F.Supp. 762, 787 (E.D.N.Y.1980), modified, 100 F.R.D. 718 (1983), mandamus denied sub nom. In re Diamond Shamrock Chemicals Co., 725 F.2d 858 (2d Cir.), cert. denied, 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984), the rule requires only that resolution of the common questions affect all or a substantial number of the class members, Stewart v. Winter, 669 F.2d 328, 335 (5th Cir.1982).”
Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir.1986).
As previously noted in this opinion, the trial court certified the following claims for class treatment: (1) the claim that CIT breached the lease agreement during the Premier program by retaining fees not authorized by the lease agreement; (2) the claim that CIT breached the lease agreement during the American Bankers program by charging an unreasonable fee in violation of New Jersey law; and (3) the claim that CIT breached the implied covenant of good faith in the manner in which it established and administered the insurance programs. We agree with McFadden that these claims are based on CIT’s methods of administering its insurance programs and assessing fees under those programs. Therefore, the claims can be treated on a class-wide basis.
CIT argues that, in order for McFadden to prevail on these claims, the trial court would have to treat the language of the lease agreement as ambiguous. If the language is ambiguous, CIT argues, the trial court will have to look at the subjective intent of each party to determine the meaning of the lease agreement, making class treatment inappropriate. We disagree. The language of the lease agreement is unambiguous, and McFadden does not argue otherwise. Moreover, CIT used the same standard lease agreement with each class member and charged each class member a monthly amount for insurance placed by CIT. Thus, there will be no need for individualized evidence to address McFadden’s claims that CIT’s methods violated the lease agreement and the duty of good faith. Consequently, we hold that McFadden presented “common issues of law and fact,” Rule 23(a), and, therefore, satisfied the commonality prerequisite for class certification.[7]

ii. Typicality

To establish typicality, the party seeking class certification must demonstrate that “the claims or defenses of the representative parties are typical of the claims or defenses of the class.” Rule 23(a), Ala. R. Civ. P. “The ‘typicality’ requirement focuses less on the relative strengths of the named and unnamed plaintiffs’ cases than on the similarity of the legal and remedial theories behind *125 their claims.” Jenkins, 782 F.2d at 472. CIT argues that McFadden’s claims are not typical of those of the class, because, it argues, there could be myriad reasons why class members chose to allow CIT to obtain insurance coverage for them and because there is no proof that the other class members feel, as McFadden does, that the fees were outside the bounds of the lease agreement.
Again, however, the issues to be addressed in this case involve CIT’s methods of administering the insurance programs and assessing fees. CIT used the same standard lease agreement with each class member, charged each class member a monthly fee, and otherwise administered its insurance programs without regard to the individual circumstances of a class member. Under these circumstances, the “legal and remedial theories” underlying McFadden’s claims and those of the class members would be the same. See Jenkins, supra. Therefore, we hold that McFadden satisfied the typicality requirement of Rule 23(a). We now turn to the requirements of Rule 23(b)(3).

B. Rule 23(b)(3) Requirements

CIT argues that McFadden failed to meet the requirements of Rule 23(b)(3), Ala. R. Civ. P., for class certification. Rule 23(b) provides, in pertinent part:
“(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
[[Image here]]
“(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. ...”
The trial court found that McFadden had met its burden to show that common issues of law and fact predominated in the case and that a class action was the superi- or means of resolving the dispute. CIT has not argued to this Court that the trial court exceeded its discretion in finding that McFadden had satisfied the superiority requirement. Therefore, we limit our discussion to the Rule 23(b)(3) requirement “that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.”
CIT argues here, as it did regarding the requirements of Rule 23(a), that, in order to address McFadden’s claims, the trial court will have to consider the individual intent of each class member to determine (1) whether the class member thought that the lease agreement limited the fees CIT could charge, and (2) why the class member allowed CIT to provide insurance. CIT’s argument relies heavily on this Court’s decision in Reynolds Metals Co. v. Hill, 825 So.2d 100 (Ala.2002).
In Reynolds Metals, former employees of Reynolds Metals claimed that they had been promised that severance benefits would be paid to them when Reynolds Metals sold the facility to another company. The promise had allegedly been made orally by a vice president of Reynolds Metals during town hall-type meetings. We vacated the trial court’s order certifying the plaintiff employees as a class, stating that “Reynolds has demonstrated that individualized evidence from each class member is necessary to determine what contract, if any, exists between it and the class member.” 825 So.2d at 107. Further, we found that “individual evidence from each class member would be necessary to determine whether his or her conduct in fact constituted an acceptance” of *126 the alleged promise of severance benefits. 825 So.2d at 107. Thus, we concluded that “individual issues of proof predominate^] in [the plaintiffs’] claims” and that “the plaintiff employees failed to satisfy Rule 23(b)(S)’s predominance requirement as to ... their [breach-of-contract] claims.” Reynolds Metals, 825 So.2d at 108.
Reynolds Metals is distinguishable from this case. Here, the standard lease agreement signed by each class member is written, not oral. Both parties have argued that the terms of the lease agreement are unambiguous. Therefore, the trial court in this case will not be required to determine whether a contract existed between CIT and any class member or what the terms of that contract might be. Moreover, as discussed previously, no individualized evidence will be required to establish McFadden’s claims regarding CIT’s conduct in administering the insurance programs and in assessing fees for the insurance it placed. Therefore, unlike Reynolds Metals, individual issues of proof do not predominate in this case.
We have stated that “[i]n determining whether the questions of law or fact common to the class members predominate over those questions that affect only individual class members, the court must initially identify the substantive law applicable to the case and identify the proof that will be necessary to establish the claim.” Ex parte Green Tree Fin. Corp., 723 So.2d 6, 9 (Ala.1998). The standard lease agreement used in this case provides: “[T]his lease will be governed by the laws of the State of New Jersey.”[8] Therefore, the same substantive law will apply to all the claims. Moreover, McFadden’s claims — that CIT’s actions under the Premier program led to the imposition on its customers of charges that were outside the scope of the lease agreement; that CIT’s actions under the American Bankers program resulted in its customers being charged unreasonable fees; and that CIT’s administration of the insurance programs violated the duty of good faith — can be established by reviewing the terms of the lease agreement and the evidence related to CIT’s methods of providing insurance. As we have previously discussed, we do not find any ambiguity in the terms of the standard lease agreement, and CIT’s methods of administering the insurance programs and assessing fees were the same for each class member. Therefore, there will be no need for individualized proof as to either of those matters.
CIT also argues that McFadden cannot demonstrate a predominance of common issues of law and fact, because the calculation of damages will require individualized evidence, and McFadden has not presented the trial court with a class-wide method of determining damages. However, as the *127 United States Court of Appeals for the First Circuit noted in Smilow v. Southwestern Bell Mobile Systems, 323 F.3d 32, 40 (1st Cir.2003), “[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Where ... common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.” In this case, as in Smilow, common questions of law and fact predominate regarding CIT’s liability, thereby satisfying the predominance requirement, despite the fact that each customer’s damages would have to be calculated. CIT has not convinced this Court that there is a likely “potential for highly individualized damages computations.” Compass Bank v. Snow, 823 So.2d at 676 (emphasis added).[9]
Finally, CIT argues that McFadden cannot meet the Rule 23(b)(3) predominance requirement because, CIT argues, its affirmative defenses of waiver, mitigation of damages, and voluntary payment will require individualized proof.[10] Any issues of law or fact underlying CIT’s waiver and mitigation-of-damages defenses would appear to be common to all class members. CIT argues, citing no authority, that waiver is established by McFadden’s consistent payment of monthly invoices for its leased equipment that included an insurance charge and, again citing no authority, that McFadden could have mitigated its damages by providing proof of its own insurance coverage. However, the class certified by the trial court includes only those customers who entered into a standard lease agreement with CIT and who, after they failed to provide proof of insurance, paid insurance charges incurred under the lease agreement. It would appear, therefore, that CIT’s waiver and mitigation-of-damages arguments would apply in substantially the same way to all class members. Therefore, CIT has not demonstrated that any individualized proof would be required regarding either of these defenses.
Finally, we consider CIT’s argument that its voluntary-payment defense raises individualized issues that defeat a finding of predominance. “This Court has long recognized the defense of voluntary payment.” U-Haul Co. of Alabama, Inc. v. Johnson, 893 So.2d 307, 311 (Ala.2004). New Jersey has also recognized the defense. “In both Alabama and New Jersey, a party who voluntarily pays sums without *128 objection [with full knowledge of all the facts] cannot subsequently maintain a ... claim to recover the funds paid absent fraud, duress, [or] extortion.” CIT’s brief, at 30 (citations omitted). See, e.g., U-Haul, 893 So.2d at 311 (quoting Mt. Airy Ins. Co. v. Doe Law Firm, 668 So.2d 534, 537 (Ala.1995)).
As CIT acknowledges, Alabama law recognizes a “ ‘mistake’ exception to the voluntary payment [defense].” CIT’s brief, at 55. In that regard, “[i]t is well settled that money voluntarily paid under a mistake of fact may be recovered, even where the party paying had means of ascertaining the real facts.” Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc., 366 So.2d 251, 257 (Ala.1978) (Torbert, C.J., concurring specially) (citations omitted). Insofar as this exception is concerned, according to CIT, “there is no difference between New Jersey law and ... Alabama law.” CIT’s brief, at 55.
The foundation for CIT’s argument that McFadden’s claims are barred by the voluntary-payment doctrine is the undisputed evidence that McFadden “paid invoices with a line item showing ‘Insurance Charges’ of $15.15 for 58 months without any inquiry or objection.” CIT’s brief, at 29-30. However, as the trial court noted in the class-certification order, “[i]f paying the charge after being billed for it is enough to give rise to the defense of ... voluntary payment, then the court may apply that defense across the board to each class member.” (Emphasis added.) Furthermore, CIT points to no evidence indicating that McFadden or any other member of the class received any information, much less full information, regarding the reasonableness of the insurance charges or the manner in which CIT set its insurance charges, allocated those charges between it and other companies, or otherwise administered its insurance programs. Thus, we are not convinced by CIT’s argument that its voluntary-payment defense raises individualized issues that defeat a finding of predominance.

Conclusion

For the foregoing reasons, we conclude that the trial court did not exceed its discretion in certifying this case as a class action. Therefore, the trial court’s class-certification order is affirmed.
AFFIRMED.
WOODALL and PARKER, JJ., concur.
LYONS, SMITH, MURDOCK, and SHAW, JJ., concur in the rationale in part and concur in the result.
STUART and BOLIN, JJ., concur in the result.
COBB, C.J., recuses herself.

. CIT was formerly known as AT & T Credit Corporation.

. Premier was formerly known as Lease Insurance Services Corporation.

. As an existing customer, McFadden was brought into the American Bankers program.

. McFadden initially asserted a claim of fraudulent suppression but eventually abandoned its efforts to certify a class as to that claim.

. This Court now phrases the question in terms of whether a trial court "exceeded'' its discretion, rather than whether the trial court "abused” its discretion. The standard of review remains the same. See Classroomdi-rect.com, LLC v. Draphix, LLC, 992 So.2d 692, 701 n. 1 (Ala.2008); Kyser v. Harrison, 908 So.2d 914 (Ala.2005); and Ex parte Family Dollar Stores of Alabama, Inc., 906 So.2d 892, 899 (Ala.2005).

. Much of CIT’s argument regarding McFadden’s alleged lack of standing relates to the underlying merits of McFadden's claims. McFadden argues that a consideration of the merits at this stage of the case is inappropriate. Because we conclude that McFadden has standing to bring its claims, we do not address whether, or to what extent, a merit s-related inquiry is allowed during the class-certification process.

. CIT also argues that the trial court erred in finding that the commonality requirement had been satisfied, because the court failed to account for those class members who have benefited from the CIT-placed insurance. CIT cites, as an example, a class member that incurred a loss, filed a claim under the existing insurance program, and received new equipment. CIT argues that the customer benefited from the insurance program, because it later exercised its option to purchase the equipment for a nominal fee at the end of the lease. However, CIT's argument again overlooks the essence of McFadden's claims, which is that CIT’s methods of administering the insurance programs and of assessing the fees resulted in excessive or unreasonable charges to the members of the class. Whether any member of the class benefited from being reimbursed for a loss under an insurance program is irrelevant to the resolution of McFadden’s claims.

. CIT argues that the duty of good faith is an implied duty arising outside the terms of the lease agreement and, therefore, the claim alleging it violated that duty is not governed by the choice-of-law provision in the lease agreement. Consequently, according to CIT, because the class includes members from across the nation, the resolution of this claim would require the trial court to construe the laws of many states. McFadden argues that CIT has raised this issue for the first time on appeal. Although CIT mentioned this argument generally in its initial motion to dismiss for failure to state a claim upon which relief can be granted, the issue was not argued — either in its brief or at the evidentiary hearing — in response to McFadden’s motion for class certification. Therefore, we decline to address this argument. See Riley v. Joint Fiscal Comm. of Alabama Legislature, 26 So.3d 1150, 1159 (Ala.2009) (this Court’s " 'review is restricted to the evidence and arguments considered by the trial court’ ” (quoting Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992))). See also Barnett v. Estate of Anderson, 966 So.2d 915, 920 (Ala.2007) ("We decline to review an issue ... that was not considered by the trial court.”).

. CIT argues in its reply brief that McFadden's damages claims are “based on a theory that CIT was unjustly enriched.” CIT’s reply brief, at 31. CIT argues that McFadden avoids using the phrase "unjust enrichment” to describe its claims, because, it argues, McFadden knows that " ‘unjust enrichment claims ... are unsuitable for class-action treatment.'” CIT's reply brief, at 31-32 (quoting Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1123 (Ala.2003)). However, this argument appears for the first time in CIT's reply brief. " ‘[T]his Court does not address issues raised for the first time in a reply brief.' " Cobb v. Fisher, 20 So.3d 1253, 1258 (Ala.2009) (quoting Byrd v. Lamar, 846 So.2d 334, 341 (Ala.2002)).

. CIT also states in a conclusoty fashion that ”[o]ther affirmative defenses plead[ed] by [CIT], including estoppel, ratification, acquiescence, and laches likewise raise individual issues.” CIT’s brief, at 58. However, with the exception of a supra cite to Compass Bank, CIT cites no authority and provides no argument as to how these defenses will require individualized proof. " ' ”[I]t is not the function of this Court to do a party’s legal research or to make or address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ' ” Latham v. Department of Corr., 927 So.2d 815, 820 n. 11 (Ala.2005) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).